IMPERIAL RESOURCE RECOVERY ASSOCIATES, L.P., Western Power Group Unit II, Incorporated, HCE–Imperial Valley, Inc., Hydra–Co Enterprises, Inc., Plaintiffs,

v.

**ALLENDALE MUTUAL INSURANCE COMPANY, Affiliated FM Insurance Company, Defendants.**

No. 92–CV–638 (FJS) (DNH).

United States District Court, N.D. New York.

March 14, 1995.

Sugarman, Wallace Law Firm, Syracuse, NY (George E. Demore, of counsel), for plaintiffs.

Andrews, Ransford Law Firm, Syracuse, NY (Stephen J. Ransford, of counsel) and Robins, Kaplan Law Firm, Costa Mesa, CA (Scott G. Johnson, of counsel), for defendants.

## DECISION AND ORDER

SCULLIN, District Judge.

This is an insurance coverage dispute involving three fires that destroyed "organic fuel", primarily straw, during the construction of a California power production facility in the summer of 1990. Plaintiffs filed this action on March 5, 1992 in the Supreme Court for Onondaga County and the out-of-state defendant removed it to this court on May 19, 1992. Jurisdiction is based on diversity, and New York's choice of law rule requires that California law govern this matter. The case is presently before the court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil of Procedure. Defendants argue that summary judgment is appropriate because plaintiffs' action was time-barred by the policy's suit limitation clause and, in the alternative, that the damaged property was not insured under the policy in question. For the reasons stated below, the defendants' motion is granted.

## BACKGROUND

### The Parties

There are four plaintiffs. Imperial Resource Recovery Associates ("Imperial") is a California limited partnership with offices in Syracuse. On June 17, 1988, Imperial contracted with National Energy Production Corporation ("NEPSCO"), which is not a party to this action, to construct a biomass power production facility in Imperial Valley, California. In this enterprise, Imperial had three general partners, who are the other three plaintiffs in the instant case: Western Power Group Unit II, a California corporation with an office in Newport Beach, California; HCE–Imperial Valley, Inc., a New York corporation with an office in Syracuse; and Hydra–Co Enterprises, Inc., also a New York corporation with an office in Syracuse.

### The Imperial–NEPSCO Contract

Article 8.1.1(d) of Imperial–NEPSCO contract required NEPSCO to obtain and maintain a Builder's Risk Insurance Policy with Imperial and its three partners as additional named insureds. NEPSCO also was to maintain the policy at its cost from the date

of the Notice to Proceed through the Completion Date and care and custody of the facility was to remain with NEPSCO until the completion date. Completion was to be determined, at least in part, by start-up and testing, for which Imperial was to provide the performance fuel. Pursuant to this agreement, NEPSCO obtained an insurance policy with defendant Affiliated FM Insurance Co. ("Affiliated"). Defendant Allendale Mutual Insurance Co. is Affiliated's parent corporation.

### The Affiliated Policy

The Affiliated insurance policy defined "property insured" as, inter alia, "[m]aterials and supplies of all kinds and temporary structures incidental to the construction of said building(s) or structure(s)." Demore Aff. Ex. B, p. 18. The policy also insured "all materials, equipment, machinery and supplies which have been specifically designated for use in the construction" of the facility. *Id.* Additionally, the policy contained a suits limitations provision, which provided that

> [n]o suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim....

The stated liability limits were $30,000,000 with each property damage claim subject to a $25,000 deductible.

### The Policy Claim

On June 13, July 13, and July 28, 1990, three separate fires occurred at the still uncompleted facility, while it was under NEPSCO's care and custody. These fires were deemed to be caused by spontaneous combustion and resulted in the destruction of organic fuel (straw) that was present at the site. On August 8, 1990, plaintiffs gave written notice to Affiliated and NEPSCO of the damages it sustained as a result of each of these fires.

On November 5, 1990, Affiliated Senior Adjuster Norman Schurr wrote to Joseph

Meaney, a risk manager at Hydra–Co, regarding plaintiffs' claims for coverage under the policy. In this letter, Mr. Schurr stated that

> The straw that burned was to be used as fuel in the boiler to create energy. The above referenced policy provides coverage for buildings, structures, etc., as set forth, and does not provide coverage for the straw to be used as fuel. As a result, this policy cannot respond to the loss of straw that was damaged in the above referenced fires.

Demore Aff. Ex. D.

Following the receipt of this letter, plaintiffs hired Claims Services Information Network, Inc. to assist them in pursuing their claims under their policy. On December 27, 1990, Claims Services, Inc., through its president, Peter Merle, sent a letter to defendants in which it set forth the grounds for its position that coverage for the damage was warranted under the policy. Additionally, the letter requested that defendants "reconsider their position," and schedule a settlement conference for the parties. *Id.*, Ex. E.

On January 21, 1991, Mr. Schurr advised plaintiffs by letter that defendant Affiliated was "reviewing each area" that was referred to in Mr. Merle's December 27 letter. *Id.*, Ex. F. On January 24, 1991, Affiliated wrote that it had "reconsidered [its] position ... [and found] no basis for changing that position. Therefore, the denial of the claim as set forth in [the] letter of November 5, 1990 must stand." *Id.*, Ex. G.

Notwithstanding the previous denials of coverage, on March 6, 1991, Hydra–Co sent a letter to Affiliated with the request that it be accepted as proof of loss as required by the policy. Demore Aff. Ex. H. On April 4, 1991, Mr. Schurr responded to this letter, stating that, "[b]ased upon [Affiliated's] review to date, there [was] no liability for the [damages]." *Id.*, Ex. I. He referred to both the November 5, 1990 letter and the January 24, 1991 letter as providing discussions of the

policy's coverage provisions, and he requested that plaintiffs forward any additional information regarding coverage. *Id.*, Ex. I.

On April 18, 1991, Mr. Meaney of Hydra–Co sent another letter to Mr. Schurr in which he reiterated plaintiffs' belief that "coverage applies to the previously reported fires." This letter also requested that Mr. Schurr organize a meeting among the parties, "before proceeding any further." *Id.*, Ex. J. Pursuant to this request, representatives of plaintiffs and defendants met at Hydra–Co's Syracuse office on May 14 and 15, 1991. Plaintiffs claim that this "meeting was held to try and reach a settlement regarding the claim for lost fuel due to the fires," and concluded without defendants announcing a final decision. Wallace Aff. p. 4.

On June 13, 1991, Mr. Schurr sent a letter to Mr. Meaney in which he concluded that "[defendants'] previously expressed position of declination for these losses was a correct one which [they] reaffirm." Demore Aff. Ex. L. The letter states that the reasons for defendants continued denial of coverage "[had] been set forth in prior correspondence, which [they] continue to stand upon." *Id.* Thereafter, plaintiffs commenced this action in New York Supreme Court, Onondaga County on March 5, 1992, and defendants removed it to this court on April 20, 1992.[1]

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence in the light most favorable to the non-movant, the court determines that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 457–58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). A genuine issue of material fact exists if the evidence is such that a reasonable jury could

---

**1.** The actual date of commencement of this action is disputed by the parties. Plaintiffs claim that the action was commenced on March 5, pursuant to New York CPLR 203(b)(5), while defendant argues that the action was not commenced until April 20, pursuant to CPLR 304. The court need not decide the actual commencement date, however, as plaintiffs action is time barred as of either date.

return a verdict for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The parties agree that the court must apply California law in deciding this motion. As stated above, the policy in question contained a suit limitation clause which required that plaintiffs' suit for claims against the policy be instituted within one year from the dates of the respective fires. Under California law, however, this limitation period must be "equitably tolled from the time the insured files a timely notice ... to the time the insurer formally denies the claim in writing." *Prudential–LMI Comm. Ins. v. Superior Court,* 51 Cal.3d 674, 678, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990).

It is undisputed that the fires, which gave rise to plaintiffs' original claims on their policy, occurred on June 13, July 13, and July 28, 1990. It is also undisputed that on August 8, 1990, plaintiffs gave defendants written notice of a claim for the damages suffered as a result of these fires. Demore Aff. Ex. C. Thus, pursuant to the holding of the California Supreme Court in *Prudential–LMI,* the one year limitation period was tolled from August 8, 1990 until a formal denial of claim was issued by defendants. The threshold issue for the court to determine, therefore, is which of defendants' letters constituted their formal denial of plaintiffs' claims.

In regard to the timing of the denial, defendants argue that Allendale's November 5, 1990 letter clearly denied coverage of plain-tiffs' claims and, therefore, served to end the tolling period. Conversely, plaintiffs maintain that that letter merely initiated a prolonged period of correspondence whereby both parties continued to investigate and negotiate the claim. Formal denial, according to plaintiffs, did not occur until they received the June 13, 1991 letter from defendants, as the ongoing negotiations equitably tolled the time between November 5, 1990 and June 13, 1991.[2]

The equitable tolling doctrine was first established in California in 1990. *Prudential–LMI,* 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230. In establishing this standard in *Prudential–LMI,* the Supreme Court of California relied on the reasoning of the Supreme Court of New Jersey in *Peloso v. Hartford Fire Insurance Co.,* 56 N.J. 514, 267 A.2d 498 (1970).[3]

In *Peloso,* the plaintiffs owned a multiple dwelling which was insured by the defendant against loss resulting from fire. The insurance policy contained a suit limitation clause, similar to that in the case at bar, which required any action on the policy to be brought within twelve months of the loss. *Id.* at 517, 267 A.2d 498.

The plaintiffs' building was damaged by fire on September 12 and 13, 1965, after which plaintiffs gave prompt notice of the fire to the defendant. After orally denying the claims twice, defendant sent a letter to plaintiffs on June 15, 1966, in which it specifically denied any liability for the damage

**2.** Using August 8, 1990 as the date that the tolling period began, the calculations show that as of that date, 56 days had elapsed on plaintiffs' twelve month limitation period for their claim on the June 13 fire, 26 days on the July 13 fire and 11 days on the July 28 fire. Therefore, once the tolling period ended, plaintiffs had 309 days to sue on the first fire, 339 days on the second and 354 on the last fire.

Defendants argue that plaintiffs claims were denied on November 5, 1990 and, assuming the action was commenced on March 5, 1992, plaintiffs suit would be time-barred because 486 days elapsed between the ending of the tolling period and the filing of suit. Plaintiffs, on the other hand, argue that the tolling period did not end until June 13, 1991 and, therefore, their suit was not time barred because only 266 days had elapsed between the end of the tolling period and the date of filing.

**3.** Due to its relatively recent adoption, this court has been unable to find any California cases which address the issue of what constitutes a "formal denial" for equitable tolling purposes. In support of their argument, defendants cite *San Jose Crane & Rigging, Inc. v. Lexington Insurance Co.,* 227 Cal.App.3d 1314, 278 Cal.Rptr. 301 (6th Dist.1991) in which the California Court of Appeal applied the equitable tolling doctrine for the first time to a commercial all-risk policy.

Plaintiffs argue that *San Jose Crane* is not controlling in the case at bar because "[t]he plaintiffs in [that case] had filed their lawsuit in a timely manner using th[e] first denial and did not consider or set forth any argument regarding the later denials." Pl.Memo. at 11. This court agrees with the plaintiffs that "[San Jose Crane] does not offer guidance for how to address the issues raised" in the present case. *Id.*

caused by the fire. Subsequent to the receipt of the letter, plaintiffs continued to engage defendant's counsel in negotiations regarding the decision to deny coverage.[4]

In assessing whether this suit was time barred, the *Peloso* court held that, in light of the tolling of the twelve month limitation, the suit was timely. This determination was based on the court's finding that notice was provided to the defendant on September 15, 1966, at which time the statute was tolled. "[The twelve month period] did not begin to run again until June 15, 1966, when plaintiffs were notified in writing that liability was denied." *Id.* at 521, 267 A.2d 498.

While the facts in *Peloso* differ from those in the case at bar in that there was only one written denial of the claim, they are not entirely dissimilar. In both cases, negotiations between the parties continued after the initial written denial was received by the plaintiffs. In *Peloso,* the court found that, despite these continued negotiations, the "formal denial" occurred "when plaintiffs were notified in writing that liability was denied." *Id.* In the case at bar, the plaintiffs received written notification of the denial of their claim on November 5, 1990.

In *Prudential–LMI v. Supreme Court,*[5] the defendant had sent two letters to the plaintiffs in regard to the denial of plaintiffs' claims. The first letter was sent in January 1987, approximately thirteen months after the defendant was notified of plaintiffs' loss. This letter was not a final denial, however, as it indicated that the claim was going to be denied *unless* plaintiffs had any other information that favored coverage. *Prudential–LMI,* 51 Cal.3d at 692, 274 Cal.Rptr. 387, 798 P.2d 1230. The second letter was sent in September 1987, and contained an unequivocal denial of plaintiffs claims. This letter was deemed to be a formal denial for equitable tolling purposes. *Id.* at 692–93, 274 Cal. Rptr. 387, 798 P.2d 1230.

In the present case, it is clear from the record that the November 5, 1990 letter constituted an unequivocal, written denial of plaintiffs' claims. While plaintiffs argue that this letter should not be considered a formal denial because it did not mention "the words 'denial' or 'disclaimer,' " Pl. Memo. in Opp. at 10, this court finds no authority for such a requirement. It is apparent from the record that both parties treated this letter as a denial of all claims, notwithstanding the absence of these specific words. The author of the letter, Mr. Schurr, testified at his deposition that the company's denial was set forth in the November 5 communication and the file on these claims was closed after that. Def. Supp. Memo. Ex. B (Schurr Deposition). Similarly, Hydra–Co's risk manager, Joseph Meaney, testified during his deposition that the November 5 letter from defendant "was a denial of [his] letter in which [he] had made claim of the five fires." Def. Mot. Ex. 6 at 52 (Meaney Deposition). Additionally, on November 30, 1990, Mr. Meaney issued an internal memo to the Imperial management committee which was entitled: "Fuel Fire Claims Against Allendale Insurance Company." This memo began with the following statement: "On November 9, 1990[6] Allendale denied any liability under the All Risk Builder's Risk policy for the above claims." Def. Mot. Ex. 13.

Clearly, plaintiffs recognized the November 5, 1990 letter as being an unequivocal denial of their claims regarding the fires, and they cannot now argue that it was "merely the beginning of correspondence" between the parties. The subsequent discussions and reviews of the denial by defendants, all at the request of plaintiffs, did not serve to retroactively nullify the effect of that letter.

## CONCLUSION

In light of the above, the court finds that the November 5, 1990 letter from Mr. Schurr

---

4. These conversations occurred in July 1966, and culminated on July 21 when plaintiffs informed defendant that they intended to sue the defendant. Suit was then commenced on March 10, 1967.

5. In *Prudential–LMI,* the plaintiffs built an apartment house and insured it with extended coverage from defendant. In November 1985, plaintiffs noticed an extensive crack in the foundation of the building. They subsequently notified defendant of their claim for coverage in December 1985.

6. Imperial received the November 5, 1990 letter from defendants on November 9, 1990.

to Mr. Meaney, in which defendants denied coverage for the fire damages, constituted a formal denial and, therefore, ended the equitable tolling period. More than one year having elapsed between the end of the tolling period and the commencement of this lawsuit, this action is time barred.

Therefore, it is hereby

ORDERED, that defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**