Opinion
 

 WARD, J.
 

 Plaintiffs and appellants Davinder and Geeta Singh owned property in Fontana insured by Allstate Insurance Company (Allstate). Plaintiffs sued Allstate when Allstate denied coverage for fire loss of the house on the property. The trial court granted Allstate’s motion for summary judgment, based on plaintiffs’ failure to file suit within the one-year period specified in the insurance contract.
 

 Plaintiffs contend that their suit was timely filed. They argue that not only was the one-year period equitably tolled while Allstate investigated and initially denied their claim, but there was a second period of equitable tolling because Allstate reconsidered their claim. We affirm. The trial court properly granted summary judgment, as plaintiffs’ claim was time-barred.
 

 Facts and Procedural History
 

 Plaintiffs owned a house in Fontana. In 1993, tenants lived in the house. In August of 1993, plaintiffs evicted the tenants. In late August of 1993, the property was dirty, littered with trash and appeared to be abandoned. In September 1993, plaintiffs’ nephew went to the house to change the locks. He noticed some damage and vandalism. Plaintiffs visited the property a few days later and found that a wall had been smashed in the living room, kitchen cupboards were broken, the stove was broken, the refrigerator had been stolen, fixtures had been removed in the bathroom, and many windows were broken.
 

 Plaintiffs submitted an insurance claim to Allstate for the vandalism, alleged to have occurred on September 23, 1993. Allstate initially denied the
 
 *138
 
 claim on the ground that the property had been vacant for 30 days, but plaintiffs showed that the tenants had not vacated until August 27, 1993. Allstate paid $6,529.49 for the September 1993 vandalism claim.
 

 Over the next seven months, plaintiffs went to the house about six times. Although plaintiffs instructed their nephew several times to go to the house and board up the windows, transients would break into and occupy the property; on one occasion, plaintiffs even encountered a transient living in the house.
 

 City officials notified plaintiffs of the dilapidated premises and asked plaintiffs to repair the property. Otherwise, the city would take steps to demolish the structure. When the city notified plaintiffs of problems, plaintiffs would ask their nephew to go out and re-board the windows. Plaintiffs’ nephew told plaintiffs that transients were living on the property.
 

 On April 14, 1994, plaintiffs reported a second vandalism loss. On or about April 28, 1994, Allstate paid $9,802.51 on the second vandalism claim.
 

 On April 27, 1994, the home was damaged by a fire. The fire loss is the claim that is the subject of this lawsuit. The fire started at approximately 3 a.m. The fire damaged the inside of the house. The property had been vacant for seven or eight months up to the time of the fire. The inside of the house was littered with trash, empty food containers, snack food wrappers, magazines, cigarette debris and expended butane lighters. Candle wax and bits of candles were found in various rooms in the house.
 

 Plaintiffs presented a claim to Allstate the morning after the vandals had set fire to the house. By a letter of November 9, 1994, Allstate denied plaintiffs’ claim for thé fire loss, on the ground that plaintiffs breached their duties under the policy. Although plaintiffs knew about transients damaging the property, they failed to take effective and reasonable steps to repair and secure it. Plaintiffs’ failure to repair the property contributed to the risk of fire. The denial letter informed plaintiffs that, under the terms of the policy, they had one year after the loss in which to file suit. Allstate’s letter closed with the statement that, “[i]f there is any further information you would like us to consider, please do., not hesitate to bring this information to our attention.”
 

 On February 21, 1995, plaintiffs wrote to Allstate, requesting reconsideration of the fire loss claim. Plaintiffs disputed Allstate’s reasons for denying the claim. Plaintiffs also urged that they did “not wish to litigate this matter,”
 
 *139
 
 and asked Allstate to respond within 30 days. Allstate referred plaintiffs’ letter to coverage counsel, and, by letter of March 6, 1995, advised plaintiffs that Allstate would be able to provide a response within 30 days, as plaintiffs’ had asked.
 

 By letter dated March 22, 1995, Allstate again denied plaintiffs’ claim. The March 22, 1995, letter told plaintiffs that, “[a]fter reconsideration of your claim, [Allstate] respectfully informs you that the position taken in the November 9, 1994 correspondence to you remains unchanged and no policy benefits can be afforded.” The letter explained in detail the reasons for denial, and answered plaintiffs’ request for reconsideration, point by point.
 

 Plaintiffs filed this action on December 5, 1995, alleging breach of the covenant of good faith and fair dealing.
 

 Allstate mbved for summary judgment on the ground that plaintiffs’ complaint was time-barred under the policy. Plaintiffs opposed the motion on the ground of equitable tolling.
 

 The trial court granted Allstate’s motion for summary judgment on the ground of untimeliness. The court entered judgment in favor of Allstate. Plaintiffs appeal. The sole issue is whether there was more than one period of equitable tolling, which would have extended the time in which plaintiffs should have filed their complaint.
 

 Discussion
 

 I.
 
 Standard of Review
 

 The appeal arises after the trial court granted summary judgment in favor of Allstate. (1) On appeal after the granting of summary judgment, “. . . we independently assess the correctness of the trial court’s mling, applying the same legal standard as the trial court.”
 
 (Van Dyke
 
 v.
 
 Dunker & Aced
 
 (1996) 46 Cal.App.4th 446, 451 [53 Cal.Rptr.2d 862].) “We conduct a de novo examination of the evidence and independently review the trial court’s determination of questions of law. [Citations.]”
 
 (Flowmaster, Inc.
 
 v.
 
 Superior Court
 
 (1993) 16 Cal.App.4th 1019, 1026 [20 Cal.Rptr.2d 666].)
 

 Here, the chief issue is whether an additional period of equitable tolling applies to the insureds’ request for reconsideration of their insurance claim. This presents primarily a question of law. The key facts which would affect the application of equitable tolling are undisputed, also presenting an issue of law. Thus, we are not bound by the trial court’s determinations, and we
 
 *140
 
 review the question independently. (See
 
 Ghirardo
 
 v.
 
 Antonioli
 
 (1994) 8 Cal.4th 791, 799-801 [35 Cal.Rptr.2d 418, 883 P.2d 960] [application of a rule of law to undisputed facts is a question of law, subject to independent review].)
 

 II.
 
 Plaintiffs’ Complaint Was Untimely
 

 A.
 
 Prudential-LMI Applies Equitable Tolling up to the Time of the First Denial of the Claim
 

 The insurance contract provides, as required by statute, that an insured has one year from the date of the loss to file an action against the insurer. In
 
 Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court
 
 (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230], the California Supreme Court held that the one-year period is equitably tolled between the time that the insured notifies the carrier of the loss, and the denial of the claim.
 

 Here, plaintiffs notified Allstate of the loss on the same day as the fire loss, on April 27, 1994. Allstate denied the claim by letter on November 9, 1994. It is undisputed that the one-year period was equitably tolled during that time.
 
 (Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d 674.) In the absence of anything else, plaintiffs would thus have had one year from the date their claim was denied, i.e., until November 9, 1995, to file their action.
 

 B.
 
 Equitable Tolling Does Not Apply to the “Reconsideration” Period
 

 Plaintiffs assert, as they did below, that the time from February 21, 1995, when they asked for reconsideration of their claim, to March 22, 1995, when Allstate denied the claim again, should also be counted as equitable tolling time. Thus, plaintiffs argue, they should have had an additional 30 days, or until December 8, 1995, to file their complaint.
 

 This question does not appear to have been addressed in any California case.
 

 1.
 
 Policy Reasons for Equitable Tolling
 

 In
 
 Prudential-LMI,
 
 the Supreme Court explained the reasons for the short limitation period in insurance contracts: “The purpose of a statute of limitations is ‘ “to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is
 
 *141
 
 that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to prevail over the right to prosecute them.” ’ [Citations.]”
 
 (Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d 674, 684.)
 

 Against the carrier’s interest in protection from stale claims, the Supreme Court balanced the harsh consequences to the interests of the insured of a literal or strict application of the limitation while the claim was pending and undecided.
 

 The court held that equitable tolling would not contravene the policy of early trial of matters in dispute, “or work a hardship on the insurer, whose investigation will necessarily have preceded the denial of coverage.”
 
 (Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d 674, 691.)
 

 Equitable tolling would fairly balance these interests. First, the claims process would function normally, instead of requiring the insured to file suit before the carrier had even completed its investigation. Second, the insured’s reasonable expectations would be met, because the carrier would be required to investigate the claim instead of merely invoking a technical rule to defeat the insured’s claim. “Although an insurer is not required to pay a claim that is not covered . . . good faith and fair dealing require an insurer to investigate claims diligently before denying liability.”
 
 (Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d 674, 692.) Third, equitable tolling would encourage settlement, and discourage unneeded litigation.
 
 (Ibid.)
 

 “Equitable tolling is also consistent with the policies underlying the claim and limitation periods—e.g., the insurer is entitled to receive prompt notice of a claim and the insured is penalized for waiting too long after discovery to make a claim. For example, if an insured waits 11 months after discovering the loss to make his claim, he will have only 1 month to file his action after the claim is denied before it is time-barred under [Insurance Code] section 2071.”
 
 (Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d 674, 692.)
 

 Thus, to avoid some anomalous consequences which would result from a literal application of the one-year limitation, the court held the period was equitably tolled between the date of notice of the claim and the date the carrier denied the claim. Otherwise, the insured’s suit could become untimely before the carrier had even denied coverage.
 
 (Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d 674, 692-693.)
 

 
 *142
 
 2.
 
 The Policy Reasons for Equitable Tolling Do Not Apply to Reconsideration of a Claim
 

 Once a claim has been made, the carrier has pursued its investigation, and the claim has been denied, the policies behind allowing equitable tolling have been fulfilled. The carrier’s right to notice, and its ability to investigate and marshal any evidence it may need to defend, have been preserved. The insured has been provided at least some grounds, upon the denial, before being required to sue the carrier. Thereafter, however, the enforcement of the one-year limit works no injustice to either party.
 

 Here, plaintiffs’ claim was denied on November 9, 1994. The denial letter clearly informed plaintiffs they had one year within which to file suit. Allstate had been able to conduct its investigation, including the opportunity to examine plaintiffs under oath. Plaintiffs knew that Allstate had denied their claim, and thus knew of a basis to file suit before the one-year period had begun to run.
 

 Approximately three months after the denial, plaintiffs asked Allstate to reconsider their claim. Plaintiffs indicated they did “not wish to litigate this matter”; clearly, they were aware of the potential basis for a lawsuit. They also asked for an answer within 30 days. Allstate honored plaintiffs’ request for a 30-day response and, by letter of March 22, 1995, informed plaintiffs that Allstate’s position remained unchanged.
 

 Over seven months of the limitation period still remained at the time of the denial of reconsideration. Requiring plaintiffs to file their action on or before November 9, 1995, would still have given them one full year after the loss—and after they had reason to know of some grounds to sue the insurer—within which to file suit.
 

 The “reconsideration” period was not required to enable the insurer to receive notice of the claim and to investigate the claim so as to preserve its rights to defend, if it ultimately denied the claim. The “reconsideration” period did not come before plaintiffs had reason to know of their right to sue, or the expiration of the limitation in which to do so. Plaintiffs were aware of the right to sue, and of potential grounds, before any request for reconsideration. The justifications for equitable tolling are absent, once the carrier has initially denied the claim. The policies supporting the shortened limitation period are then fully applicable, and no reason for further tolling exists.
 

 a.
 
 Plaintiffs’ Authorities Are Inapplicable
 

 Plaintiffs argue that their situation parallels that of the plaintiffs in
 
 Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d 674. In
 
 *143
 

 Prudential-LMI,
 
 the plaintiffs filed notice of their claim in December of 1985, approximately one month after they discovered it. Negotiations on the claim continued for over one year, until January of 1987. The carrier sent the insureds a letter
 
 “proposing
 
 that coverage
 
 would be
 
 denied based on [an] earth movement exclusion
 
 unless
 
 the insureds had any additional information that would favor coverage. [Italics added.] At this point, [the] plaintiffs sought counsel who contacted Prudential. In February 1987, Prudential requested that [the] plaintiffs submit to an examination under oath pursuant to policy terms. It was not until September 1987, that [the] plaintiffs’ claim was denied unequivocally.”
 
 {Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d 674, 692.)
 

 Plaintiffs here urge that the November 9, 1994, letter was like the letter in
 
 Prudential-LMI,
 
 which “proposed” to deny coverage “unless” the plaintiffs could come up with information favoring coverage. Allstate’s letter told plaintiffs their claim was denied, but stated that, if plaintiffs had any further information they would like Allstate to consider, to bring the information to Allstate’s attention.
 

 Plaintiffs’ attempt to cast themselves in the same light as the plaintiffs in
 
 Prudential-LMI
 
 is not well taken. We do not have the text of the carrier’s letter in
 
 Prudential-LMI
 
 before us. But the Supreme Court’s description of the letter indicates it was a preliminary, tentative, and proposed decision, not a final one. The denial was expressly conditional, “unless” the plaintiffs brought forth additional facts. The carrier had also not yet completed its investigation, as it did not set the plaintiffs’ examination under oath until after the initial, conditional denial letter. As the Supreme Court stated, the plaintiffs’ claim in
 
 Prudential-LMI
 
 was not denied unequivocally until many months later.
 

 Here, by contrast, Allstate’s letter of November 9, 1994, could hardly be a more unequivocal denial. There was nothing tentative or conditional about it. Allstate’s investigation was thorough and complete. It had already examined plaintiffs under oath. The extension of a courtesy, to look at anything else that plaintiffs might have to offer, did not render the denial equivocal.
 

 Plaintiffs’ reliance on
 
 Walker
 
 v.
 
 American Bankers Ins.
 
 (1992) 108 Nev. 533 [836 P.2d 59], is also misplaced. In
 
 Walker,
 
 after the carrier initially denied the policyholder’s claim, but before expiration of the one-year contractual limitation period, the carrier agreed in writing to reopen the file as to the personal property portion of the claim. The carrier considered the reopened claim for over 17 months, and carried on continuous negotiations with the policyholder. Before the carrier reached any decision on the personal property, the carrier filed an action for declaratory relief, seeking a
 
 *144
 
 declaration that the policyholder was not entitled to recover that part of the loss. The carrier moved for summary judgment, which the trial court granted. On appeal, the reviewing court held that the reopening of the claim tolled the one-year statute until the date the carrier filed its suit.
 
 [1]
 
 The policyholder was thus not barred from bringing its own suit against the carrier.
 

 In
 
 Walker,
 
 the express agreement to “reopen [the] file” and the continuous negotiations after that time effectively meant there had been no denial of the personal property claim. At the least, the carrier’s agreement and its actions indicated that it did not intend to rely on the limitation provision as to the property damage claim.
 

 As the
 
 Prudential-LMI
 
 court noted, “[i]t is settled law that a waiver exists whenever an insurer intentionally relinquishes its right to rely on the limitations provision. [Citations.]”
 
 (Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d 674, 689.)
 
 [2]
 
 It is equally settled law that the carrier’s conduct which induces the policyholder not to file a prompt action can result in an estoppel.
 
 (Id.
 
 at pp. 689-690.) “[A]n insurer that leads its insured to believe that an amicable adjustment of the claim will be made, thus delaying the insured’s suit, will be estopped from asserting a limitation defense. [Citations.]”
 
 (Id.
 
 at p. 690.)
 

 This is precisely what happened in
 
 Walker.
 
 The carrier agreed in writing to reopen the claim, and conducted negotiations continuously up until the date it filed suit. The insurer’s representations and conduct caused the policyholder to delay filing suit. The insurer waived or was estopped from asserting any reliance on the one-year period.
 

 Allstate made no representation here that it would reopen plaintiffs’ file. It did not conduct continuous negotiations. After plaintiffs asked for reconsideration, Allstate notified plaintiffs that it had referred their request to coverage counsel. Allstate also advised plaintiffs that it would provide a prompt answer to the points raised in plaintiffs’ letter. The one and only reference to “reconsideration” of plaintiffs’ claim was in the selfsame March
 
 *145
 
 22 letter, which reiterated the denial of coverage. Nothing Allstate did could have caused plaintiffs to believe that it waived the one-year limitation period, and its conduct did not project the expectation that plaintiffs should hold their suit in abeyance.
 
 Walker
 
 is inapposite. (See also
 
 Claremont Aircraft, Inc.
 
 v.
 
 United States
 
 (9th Cir. 1970) 420 F.2d 896, 898 [“. . . the courtesy of the Air Force in supplying subsequent oral and written explanation should not be held to erase, or vitiate, its previous ‘final denial’ ” of coverage, and thus did not extend the policy’s limitation period].)
 

 b.
 
 Other Authorities Support a Rule Denying a Second Period of Equitable Tolling
 

 No California case has yet addressed the question whether a request for reconsideration of an insurance claim opens a new period of equitable tolling. We believe there are firm reasons to hold that a request for reconsideration does not create an additional period of “equitable tolling.”
 

 In the first place, as we have already described, the policies underlying equitable tolling cease to exist once the carrier has received notice, investigated the claim, and denied coverage. At the stage of a request for reconsideration, the carrier has already received notice of the claim and had an opportunity to investigate. The policyholder has not been required to file suit before the carrier has even decided the claim; the claim has already been denied and the plaintiff knows of a potential basis for suit.
 

 In the second place, if the carrier’s conduct after denying coverage expressly waives the one-year limit, or, as in
 
 Walker,
 
 induces the policyholder to forbear from filing suit, the doctrines of waiver and estoppel will avoid injustice on that score.
 

 In the third place, beginning a new period of equitable tolling based merely on a
 
 request
 
 for reconsideration would be anomalous. By the simple expedient of making many requests for reconsideration, claimants could extend the one-year statute at will with successive periods of tolling.
 

 Other cases support this reasoning. For example, in
 
 Wagner
 
 v.
 
 Director, Federal Emergency Mgmt. Agency
 
 (9th Cir. 1988) 847 F.2d 515, the Ninth Circuit Court of Appeals noted that “Holding that FEMA may inadvertently extend the limitations period by answering claimants’ inquiries or by considering new information ‘would contravene a strong public policy to encourage an insurance company to reconsider its original denial when confronted with potentially new facts. If insurance companies were saddled with the situation that whenever [they] reconsidered an earlier decision it would
 
 *146
 
 inaugurate a new limitations period, companies would be reluctant to offer policy holders the luxury of a second evaluation.’
 
 Falk v. Federal Ins. Admin.,
 
 1983 Fire & Casualty Cas. (CCH) 929, 930 (N.D.Cal. 1981); see
 
 Godbold v. Federal Crop Ins. Corp.,
 
 365 F.Supp. 836, 838 (N.D.Miss. 1973) (statute of limitations not extended by claimant’s meeting with insurer to obtain reconsideration).”
 
 (Id.
 
 at p. 521.)
 

 Imperial Resource Recovery Assoc,
 
 v.
 
 Allendale Mut.
 
 (N.D.N.Y. 1995) 878 F.Supp. 434, applying California law after
 
 Prudential-LMI,
 
 is particularly suggestive. The outline of events in
 
 Imperial Resource
 
 follows:
 

 1 June 13, 1990 First fire
 

 July 13, 1990 Second fire
 

 July 28, 1990 Third fire
 

 2 August 8, 1990 Insured gives carrier notice of the three fires, starting the equitable tolling period
 

 3 November 5, 1990 Carrier writes a letter stating that the policy “ ‘does not provide coverage’ ” and “ ‘As a result, this policy cannot respond to the loss.’ ”
 

 4 December 27, 1990 Insured sends a letter asking for reconsideration and for a settlement conference
 

 5 January 21, 1991 Carrier advises insured it is “ ‘reviewing each area’ ” raised in the reconsideration letter
 

 6 January 24, 1991 Carrier advises insured it had “ ‘reconsidered [its] position’ ” and concluded there was “ ‘no basis for changing’ ” its position. “ ‘Therefore, the denial of . . . November 5, 1990 must stand.’ ”
 

 7 March 6, 1991 Insured sends a letter to carrier asking that it be accepted as proof of the loss' • ■ > ■
 

 
 *147
 
 8 April 4, 1991 Carrier states by letter that, “ ‘based on review to date,’ ” there was no liability under the policy
 

 9 April 18, 1991 Insured sends another letter to carrier stating its belief that coverage applies, and requests a meeting
 

 10 May 14, 1991 Parties meet at insured’s offices
 

 11 June 13, 1991 Carrier sends a letter repeating that the “ ‘declination for these losses’ ” was the correct decision, and was “ ‘reaffirm[ed]’ ”
 

 12 March 5, 1992 Insured files suit
 

 (Imperial Resource Recovery Assoc,
 
 v.
 
 Allendale Mut., supra,
 
 878 F.Supp. 434, 435-436.)
 

 The parties in
 
 Imperial Resource
 
 agreed that California law, including the equitable tolling period described in
 
 Prudential-IMI,
 
 applied. The issue was when the equitable tolling period ended; that is, when was the claim “formally denied in writing”?
 

 The insureds argued that the November 5, 1990, letter from the carrier “merely initiated a prolonged period of correspondence whereby both parties continued to investigate and negotiate the claim. Formal denial, according to plaintiffs, did not occur until they received the June 13, 1991 letter from defendants, as the ongoing negotiations equitably tolled the time between November 5, 1990 and June 13, 1991.”
 
 {Imperial Resource Recovery Assoc.
 
 v.
 
 Allendale Mut., supra,
 
 878 F.Supp. 434, 437.)
 

 The insureds argued that the November 5, 1990, letter was not an unequivocal denial because it did not use the words “denial” or “disclaimer.” The federal district court made short work of that argument: “It is apparent from the record that both parties treated this letter as a denial of all claims, . . .”
 
 {Imperial Resource Recovery Assoc,
 
 v.
 
 Allendale Mut, supra,
 
 878 F.Supp. 434, 438.) Despite the several later requests for reconsideration, “all at the request of [insureds], [these requests] did not serve to retroactively nullify the effect of [the November 5] letter.”
 
 {Ibid.)
 

 
 *148
 

 Imperial Resource
 
 does not involve a
 
 second
 
 period of equitable tolling. Nonetheless, implicit in its discussion is the principle that, once an unequivocal denial has been made, the insured’s later requests for reconsideration do not serve the purposes of and do not extend the period of equitable tolling.
 

 Plaintiffs urge that the absence of a second period of equitable tolling, when the policyholder requests reconsideration, “would permit insurers to send out cursory ‘denial’ letters in the very early stages of claims investigation solely to commence the running of the one-year limitations period.” Plaintiffs forget that insurers have a duty to investigate claims in good faith. A quick and cursory denial, without adequate investigation, would not be in good faith. Even under plaintiffs’ example, the policyholder would receive early notice of the basis for a bad faith claim.
 

 c.
 
 Plaintiffs Failed to File Their Suit Within One Year After Expiration of the Tolling Period
 

 The undisputed facts show that plaintiffs’ claim was unequivocally denied, under
 
 Prudential-LMI,
 
 on November 9, 1994. Plaintiffs therefore had until November 9, 1995, to file their action under the policy. They did not file their action until December 5, 1995. On the legal issue of equitable tolling, we determine that no second period of equitable tolling applies to a request for reconsideration. Plaintiffs’ opposition to the motion for summary judgment demonstrated no facts supporting an estoppel or waiver of the one-year limitation.
 

 Plaintiffs’ action was therefore untimely. The trial court properly granted summary judgment.
 

 Disposition
 

 The judgment is affirmed.
 

 McKinster Acting P. J., and Gaut J., concurred.
 

 [1]
 

 As Allstate points out, the actions of the insurer in
 
 Walker
 
 resulted in what should more properly be characterized as a waiver or estoppel, rather than equitable tolling. It is significant that the insurer’s conduct—agreeing to reopen the file, and engaging in conduct which led the policyholders to delay filing their claim—took place before the one-year period had run. As the California Supreme Court noted in
 
 Prudential-LMI,
 
 a carrier’s representation, e.g., that it will “reopen” a file, which is made
 
 after
 
 the one-year period has expired, will not result in a waiver or estoppel.
 
 (Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court, supra,
 
 51 Cal.3d 674, 690, fn. 5.)
 

 [2]
 

 With the exception of conduct or representations made after the contractual limitation period has run. (See fn. 1,
 
 ante.)