Filed 12/18/13  Villafana v. Farmers Ins. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ESTEBAN VILLAFANA et al., | B246421 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC 473974) |
| v. | |
| FARMERS INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court for the County of Los Angeles. Deirdre Hill, Judge.  Affirmed.

Jeffrey D. Nadel for Plaintiffs and Appellants.

Woolls & Peer, Gregory B. Scher and Katy A. Nelson for Defendant and Respondent Mid-Century Insurance Company.

.

_____

**SUMMARY**

The defendant insurer sought and obtained summary judgment on two grounds. One basis for the grant of summary judgment was that the insured plaintiffs failed to file suit within the one-year limitation period in the insurance policy. We find no material disputed fact that the one-year contractual limitations period expired before plaintiffs filed suit, and affirm the judgment.[1]

**THE COMPLAINT AND THE UNDISPUTED FACTS**

Defendant Mid-Century Insurance Company issued an insurance policy to plaintiffs Esteban and Irma Villafana, covering accidental direct physical loss or damage to two residences on plaintiffs' property in Sylmar. The policy provided that "[s]uit on or arising out of the Section I – Property Coverage of this policy must be brought within one year after inception of the loss or damage."

From November 14 to November 20, 2008, a severe wildfire known as the Sayre fire burned in Sylmar, about two miles from plaintiffs' property. According to their complaint, plaintiffs "suffered significant property damage, including wildfire debris interior and exterior damage of the two separate properties, the main house and the ranch house . . . . The Plaintiffs also lost personal property situated inside the premises." The policy "had effective dates of coverage which should have compensated Plaintiffs for their damages sustained in the Wildfire . . . ."

Plaintiffs did not notify defendant of the damage until April 22, 2009, 153 days after the fire was extinguished (November 20, 2008). Defendant's claims file showed (in notes recorded on April 23, 2009) that "insured reports: hom[e] has smoke damage," and "[c]all from the insured this was from fire of 11/13-2008. The insured advised that he had out Verizon Home who smell strong smoke smell in attic area. Insured also has noticed smoke smell in [c]lothing."

---

[1]  Defendant moved for summary judgment on two grounds: that the contractual limitation period in the policy expired long before suit was filed, and that plaintiffs could not demonstrate they sustained "direct physical loss to their property at all – no covered claim exists." We do not address the second ground in this opinion, having found no material dispute that the complaint was time-barred.

2

Defendant investigated the claim. Disputes arose over the resolution of plaintiffs' claims. The time line of the pertinent events and correspondence is as follows:

Within five days of receiving notice of the claim, on April 27, 2009, defendant explained the claims process and asked plaintiffs to complete a notarized proof of loss form with supporting documentation. A few days later, representatives of defendant and its environmental expert, Clark Seif Clark (CSC), did a site inspection of key areas in the newer of the two residences on the property.

On May 26, 2009, CSC sent a "Limited Smoke Contamination Assessment Report" to defendant, containing its conclusions and cleaning recommendations for plaintiffs' home and furnishings "[b]ased on the visual observations and the results of the laboratory analyses . . . to return the home to a pre-loss condition."

On June 23, 2009, plaintiffs hired a public adjuster, Eugene Twarowski, to handle their claim. Mr. Twarowski asked defendant for various documents relevant to the claim, including proof of loss forms acceptable to defendant.

On July 7, 2009, defendant provided documents, including the CSC report and a proof of loss form. Defendant asked for completion of the proof of loss form, and also asked for an appointment to inspect the property, "to better define the scope of the loss based on the expert report findings and recommendations," and for a recorded statement from plaintiffs, to "assist us in our evaluation of the claimed damage."

On September 8, 2009, Mr. Twarowski provided defendant with an expert report from Environmental Management & Engineering, Inc. (EME) and a cleaning estimate from Caldecon, Inc., for $68,787.66. Pat Moffett, who authored the EME report, criticized CSC's report as incomplete, citing its remediation protocol, limited sampling and incomplete investigation of smoke contamination.

On October 9, 2009, plaintiffs provided a notarized proof of loss in the amount of $68,787.66.

On October 26, 2009, defendant sent a letter to Mr. Twarowski, advising that defendant had completed its adjustment of the claim and enclosing a check for $13,415.10. The letter drew plaintiffs' attention to the policy's time limitation for a "Suit

3

against us," quoting the provision in full, and advising that "this 'Suit Against Us' time period is exclusive of the time your claim is open." The letter further stated, "If after reviewing this letter and reading the policy language, you believe there is additional information that would apply to your claim, please provide us with those facts for consideration. I am closing your file at this time."

Mr. Twarowski then wrote numerous letters objecting to the amount defendant paid, and defendant responded with letters and three supplemental payments, as follows.

On November 19, 2009, responding to a November 4, 2009 letter from Mr. Twarowski, defendant revised its estimates and issued the first supplemental payment of $4,772.13. This letter again drew plaintiffs' attention to the one-year time limitation for suit, and stated that "[b]y law, the time spent by the insurer investigating and processing the claim does not count toward the one-year period within which a lawsuit regarding the loss must be commenced." Nothing was said in this letter about the file having been closed.

On March 4, 2010, defendant responded to two more letters from Mr. Twarowski, and advised it "must respectfully decline appraisal in this matter." Defendant again quoted the policy provision on the time limitation for suit, noted that time spent investigating and processing the claim does not count toward the one-year period, and stated that "your clients' claim remains closed at this time."

On May 12, 2010, defendant again revised its estimate, because the estimate was "missing some items that you clarified and we corrected." Defendant issued the second supplemental payment of $732.49. Defendant again cited the time limitation on suit and the exclusion of investigating and processing time, and again stated that "your clients' claim remains closed at this time." Letters from defendant dated July 27, 2010, and August 13, 2010, said the same thing.

On a date not shown in the record, plaintiffs filed a complaint with the Department of Insurance seeking mediation. (Ins. Code, § 10089.71.) A mediation occurred, and on January 14, 2011, the parties executed a stipulation for settlement (the settlement). Defendant agreed to make a $1,500 payment for "cleaning of exterior and ventilation

4

system." The parties agreed, among other things, that "[o]nce cleaning occurs and is supported by evidence of payment, the insured will have the right to contact insurer to notify of odor and/or presence of materials that would require additional consideration," and would have "60 days to submit additional tests, reports or findings related to the presence of smoke particulates at the insured location." The settlement stated it was "intended to be binding and admissible in Court" and "may be enforced pursuant to Code of Civil Procedure sections 1285, 1285.4, 1286 and 1287.4 by way of Application to the Court for the entry of Judgment based upon the acknowledgment of the parties that this Stipulation for Settlement is the legal and factual equivalent of an Arbitration Award."

But defendant did not make the $1,500 payment. Instead, on January 17, 2011, three days after signing the stipulation for settlement, defendant informed plaintiffs that it " 'exercised [its] right to withdraw our assent from the proposed "Stipulation and Settlement," ' and that 'we will not be issuing any disputed payment that may have been discussed during the mediation.' " The mediator assigned by the Department of Insurance sent an email on January 17, 2011, to all parties advising that defendant exercised its right to withdraw assent to the stipulation for settlement. Plaintiffs dispute that defendant was *entitled* to withdraw assent but not that defendant asserted the right to do so. Plaintiffs did not apply to the court for entry of judgment on the stipulation for settlement.

On February 22, 2011, defendant wrote plaintiffs "that we have determined to issue a supplemental undisputed payment for the cost to clean the mattresses, in the amount of $665.14," and enclosed a check for that amount. Defendant's letter did not repeat the previously conveyed information about the time limitation or the claim remaining closed.

On March 18, 2011, CSC provided defendant with an opinion letter on plaintiffs' expert reports (the EME/Pat Moffet reports), concluding CSC's initial findings and recommendations "appear to still be most accurate." Plaintiffs' expert had inspected plaintiffs' property again in January 2011, and EME had made a second report to plaintiffs on February 1, 2011.

5

Plaintiffs continued to object that defendant owed more benefits. On April 12, 2011, defendant wrote explaining that it had issued payment for the undisputed portion of the claimed loss, had explained its determination with specific responses to information Mr. Twarowski provided, and "[a]s such, the claim remains closed at this time." The substance and tone of this letter made plain that defendant did not intend to pay more on the claim and the parties had taken antagonistic positions: defendant noted its disagreement "with your vague and unfounded accusations and mischaracterizations of the true facts." The letter stated defendant had "fully responded" to Mr. Twarowski's letter of January 25, 2011, "and your continued allegations to the contrary merit no further comment."

On May 3, 2011, responding to an April 18, 2011 letter from Mr. Twarowski, defendant repeated the statements in its April 12, 2011 letter. The May 3, 2011 letter described Mr. Twarowski's correspondence as containing "self-serving, inflammatory, and obstructionist allegations" and as "so vague and devoid of verifiable information that it is not reasonably possible to evaluate or respond to them." Defendant also stated it had "appropriately exercised its right of rescission regarding the stipulation for settlement" so that the settlement "does not exist" and Mr. Twarowski's "continued references to it are both unprofessional and improper."

On December 2, 2011, plaintiffs filed this lawsuit for breach of contract and breach of the covenant of good faith and fair dealing.[2]

Plaintiffs' complaint alleged facts relating to the policy and the Sayre fire, and alleged plaintiffs suffered significant damage to both houses and to personal property. The complaint alleged defendant breached its obligations under the policy because CSC's report was incomplete and inaccurate, and defendants used it to provide a "grossly underestimate of Plaintiffs' loss at $12,391.27." The complaint alleged facts concerning plaintiffs' retention of EME, EME's inspection and reports on the wildfire damages, and the Caldecon, Inc., cost estimate; the facts surrounding the mediation and settlement; that

---

[2] Plaintiffs sued Farmers Insurance Group as well as Mid-Century Company, but dismissed their complaint as to Farmers Insurance Group.

6

defendant informed them of its withdrawal of assent to the settlement; and that plaintiffs suffered losses of more than $68,000. The complaint alleged defendant inadequately investigated the claim and unreasonably denied benefits.

On November 9, 2012, the trial court granted defendant's summary judgment motion. Plaintiffs filed a notice of appeal on January 8, 2013, and judgment was entered on January 29, 2013. We treat the appeal as having been taken from the subsequent judgment. (*Aguilar v. Universal City Studios, Inc.* (1985) 174 Cal.App.3d 384, 387, fn. 1.)

**DISCUSSION**

### 1. The Standard of Review

The standard of review of an order granting summary judgment is well-established. Our review is de novo. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We independently review the entire record, except as to evidence to which objections were timely made and sustained, in the same manner as the trial court. (*Ibid.*)

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing [defendant's] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).)

### 2. The Statute of Limitations

The standard one-year limitation period in a homeowners insurance policy "begins to run on the date of inception of the loss, defined as that point in time when appreciable damage occurs and is or should be known to the insured . . . ." (*Prudential-LMI Commercial Insurance v. Superior Court* (1990) 51 Cal.3d 674, 678 (*Prudential-LMI*).)

7

This limitation period "should be equitably tolled from the time the insured files a timely notice . . . to the time the insurer formally denies the claim in writing." (*Ibid.*) Thus, "the insurer is entitled to receive prompt notice of a claim and the insured is penalized for waiting too long after discovery to make a claim. For example, if an insured waits 11 months after discovering the loss to make his claim, he will have only 1 month to file his action after the claim is denied before it is time-barred under [Insurance Code] section 2071." (*Id.* at p. 692.)

### 3. This Case

In this case, there is no dispute over the date of inception of the loss. Plaintiffs asserted in their complaint that they should have been compensated for "their damages sustained in the Wildfire of November 13, 2008." The parties agree that the fire burned until November 20, 2008, and plaintiffs notified defendant of the loss on April 22, 2009. It is undisputed that at least 153 days of the one-year limitation period ran (November 20 to April 22) before notification to the insurer, so plaintiffs had 212 days remaining in which to file a lawsuit after defendant's formal written denial of the claim.

Thus the only pertinent issue is the date on which defendant "formally denie[d] the claim in writing." (*Prudential-LMI, supra,* 51 Cal.3d at p. 678.) Defendant says that date was October 26, 2009, the date on which defendant sent a letter to Mr. Twarowski, advising that defendant had completed its adjustment of the claim and enclosing a check for $13,415.10. Alternatively, "giving [plaintiffs] every benefit of the doubt," defendant says it formally denied the claim in writing not later than February 22, 2011, the date on which defendant made its last supplemental payment.

We do not agree that the tolling period ended on October 26, 2009, because, after defendant "closed the file" on that date, defendant continued to adjust plaintiffs' claims and issued two supplemental payments on November 19, 2009, and May 12, 2010. The parties also agreed to go to a Department of Insurance mediation in January 2011, at which the insurer agreed to pay another $1,500 and to give plaintiffs more time to submit more information in support of additional payments. However, only a few days after the mediation, the insurer withdrew from the stipulated settlement and made its last payment

8

on February 22, 2011. Since defendant had made two previous supplemental payments in November 2009 and May 2010, we disagree that February 22, 2011, was indisputably the date on which defendant denied the claim, because plaintiffs may have reasonably inferred that defendant might once again be persuaded to make another supplemental payment.

But it cannot reasonably be disputed that the tolling period ended not later than defendant's letter of April 12, 2011, which was plainly written for litigation purposes and conveyed there would be no more claim adjustment. In that letter, defendant noted its disagreement "with your vague and unfounded accusations and mischaracterizations of the true facts." The letter stated defendant had "fully responded" to Mr. Twarowski's letter of January 25, 2011, "and your continued allegations to the contrary merit no further comment." Further: "[Defendant] has issued payment to your clients for the undisputed portion of the claimed loss. [Defendant] has explained its claim determination in writing, including specific response to the estimates and other information you have provided. As such, the claim remains closed at this time."

Defendant's April 12, 2011 letter cannot be construed as anything other than a formal denial, in writing, of plaintiffs' claims. (See *Prudential-LMI, supra,* 51 Cal.3d at p. 678.) After the April 12, 2011 denial, 234 days passed before plaintiffs filed this lawsuit on December 2, 2011. This period, plus the 153 days that passed before plaintiffs notified defendant of the claim, totals 387 days, over the one-year limitation period.

After receiving defendant's April 12, 2011 denial, Mr. Twarowski apparently wrote to defendant yet again on April 18, 2011, and defendant replied on May 3, 2011, again stating the claim remained closed. While plaintiffs were certainly free to ask defendant for reconsideration, a request for reconsideration of a claim does not extend the equitable tolling period. (*Singh v. Allstate Ins. Co.* (1998) 63 Cal.App.4th 135, 141-142 [policy reasons for equitable tolling – including encouraging the insurer's diligent investigation and avoiding the harsh consequences to the insured of requiring him or her to file a lawsuit before the investigation is complete –"are absent, once the carrier has initially denied the claim"]; see also *Ashou v. Liberty Mutual Fire Ins. Co.* (2006) 138

9

Cal.App.4th 748, 762 ["equitable tolling should only apply—in the context of a previously denied claim—when the insurer has agreed to reopen and reinvestigate the claim"].) Construing Mr. Twarowski's April 18 letter favorably to plaintiffs as a request for reconsideration, it was denied in no uncertain terms in defendant's letter of May 3, 2011, and did not operate to extend the tolling period. (*Singh, supra,* at p. 142 [the plaintiffs "were aware of the right to sue, and of potential grounds, before any request for reconsideration"].) Indeed, even if the limitation period were tolled until May 3, 2011 – and we find it was not – the one-year limitation period would have expired on Thursday, December 1, 2011, the day before plaintiffs filed their complaint.

Plaintiffs do not argue about these dates on appeal. Instead, they contend the January 14, 2011 settlement was final and enforceable and could not be disavowed, and it contained no limitations provision. They argue the one-year limitation period is not applicable to the obligations in the settlement, which "modified the parties' obligations vis-à-vis the claim pursuant to the insurance policy," and "contemplates future action by both parties with respect to the claim." Further, they contend that even if the one-year limitation period were applicable, defendant should be estopped from asserting it, citing *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 488 (*Hollister*).

We find no merit in plaintiffs' arguments.

First, contrary to plaintiffs' argument, we find nothing in the settlement operates to amend the insurance policy; the parties simply agreed to resolve disputed claims on the terms described in the settlement. We fail to see how that settlement could be deemed to change or vitiate the terms of the policy, and plaintiff cites no legal authority for that conclusion. It may be, as plaintiffs contend, that defendant was not entitled to rescind the settlement, but, properly or not, it is undisputed that defendant withdrew from the settlement, made a final payment to plaintiffs on February 22, 2011, and told plaintiffs repeatedly – and in no uncertain terms in the April 12, 2011 letter – that plaintiffs' claim was closed.

Plaintiffs had legal remedies for contesting defendant's conduct. They could sue to enforce the settlement, and they could sue for breach of the insurance contract and bad

10

faith. Plaintiffs chose the latter course, and were required to bring that suit within the time period specified in the policy. That time period expired before plaintiffs filed their suit for breach of contract and bad faith. We express no opinion on whether plaintiffs may still have a viable claim for breach of the settlement agreement, or on what statute of limitations may apply to any such claim.

Second, *Hollister* provides no basis for estopping defendant from asserting that plaintiffs' suit is time-barred. In *Hollister*, the court described estoppel in the insurance context. "[E]stoppel may arise from a variety of circumstances in which the insurer's conduct threatens to unfairly impose a forfeiture of benefits upon the insured. . . . Thus an insurer may be estopped to assert a contractual limitations period if its conduct ' "induces the belated filing of the action." ' Such a result does not require affirmative conduct or fraudulent intent by the insurer; rather it is predicated on the insurer's failure to speak when in law or equity it is bound to so—as where it . . . fails to comply with a regulatory requirement that it notify the insured of the limitations period . . . ." (*Hollister, supra,* 165 Cal.App.4th at p. 488, citations omitted.)

Nothing of the sort happened here. Defendant's conduct could not have " 'induce[d] the belated filing of the action' " (*Hollister, supra,* 165 Cal.App.4th at p. 488), because defendant, properly or not, made its intentions perfectly clear. Plaintiffs insist the settlement demonstrated that plaintiffs' claim was not closed, as it provided for additional payments and "allowed plaintiffs another 60 days to submit additional test[s], reports and findings related to the presence of smoke at the insured location." That was true, until defendant withdrew from the settlement. At that point, there was no basis for plaintiffs to claim the insurer "wrongfully induce[d] the insured to believe an amicable adjustment of his claim [would] be made . . . ." Accordingly, there is no basis in equity for estopping defendant from relying on the contractual limitations period, and that period expired before plaintiffs filed their complaint.

11

**DISPOSITION**

The judgment is affirmed.  Defendant shall recover its costs on appeal.


                                        GRIMES, J.

We concur:


        BIGELOW, P. J.


        RUBIN, J.