[No. H006308. Sixth Dist. Feb. 21, 1991.]

SAN JOSE CRANE & RIGGING, INC., et al., Plaintiffs and Appellants, v.
LEXINGTON INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

James J. Duryea, Stanley M. Wessels and William M. Balin for Plaintiffs and Appellants.

Larson, Burnham & Trutner, Clark J. Burnham, Kathleen A. Clark and Michael K. Johnson for Defendant and Respondent.

OPINION

COTTLE, J.—Plaintiff insureds appeal from a judgment entered after the court granted defendant insurer's motion for summary judgment. The sole issue on appeal is whether plaintiffs' suit is barred by the one-year limitation clause contained in the parties' insurance policy. We conclude that it is not.

In *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230], the Supreme Court held that in a

first party progressive loss claim in the context of a homeowner's insurance policy the one-year limitation period should be tolled from the date insured gives notice of the loss until the time insurer formally denies coverage. For reasons we shall explain, we believe this same rule should apply in the context of a first party claim in a commercial all-risk insurance policy. Defendant concedes that plaintiffs' action is timely if the *Prudential-LMI* doctrine of equitable tolling applies, but argues that the doctrine "should be applied prospectively only to claims submitted to the insurer on or after the date of that decision." As we shall explain, we disagree.

Irrespective of the equitable tolling issue, however, this case was not an appropriate one for summary judgment. The determination of when *appreciable* damage occurs, which would trigger the running of the 12-month period, is a factual matter which should have been submitted to the jury.

### FACTS

Equipco, Inc., a Texas corporation, owned and rented out cranes to other businesses. In 1982, it sold 50 percent of its assets to a California resident named Charles Giguere. In 1985, it sold the remaining 50 percent to Giguere, who was doing business as San Jose Crane & Rigging Company. A condition of the sale was that Equipco's owner, Ken Campbell, would continue to run the business.

In December 1985, Equipco rented an 80-ton crane to Coastal Sulphur (hereafter CS). CS intended to use the crane to support a converter belt which was moving and unloading a huge pile of sulfur.

On December 14, 1985, Campbell noticed that a sulfur pile was beginning to encroach on the crane's outrigger supports. He asked CS to remove it and got CS's assurances that it would be removed. When he went back three days later, however, he discovered the sulfur had continued to build up. He took photographs and demanded that CS remove the sulfur. It continued to build up, however, and by December 24, the crane was entirely buried. Campbell could see that the cab was crushed. He got CS's assurances that "right after Christmas" CS would remove the sulfur, clean the crane, and repair any damage.

According to the only evidence presented at the summary judgment hearing, sulfur alone is not corrosive, nor is sulfur mixed with pure water. However, when polluted water is added to sulfur, it creates sulphuric acid, which can corrode metal.

After the crane was removed from the sulfur pile on January 3, 1986, Campbell inspected it and concluded that "Frankly, it looked fine." However, when the crane's manufacturer examined it on January 9, 1986, it came to a different conclusion. In a report received by Campbell on January 23, it concluded the crane was irreparably damaged by the corrosive effects of sulphuric acid. On January 27, CS advised Campbell it would not repair the crane.

Equipco, Giguere, San Jose Crane & Rigging Company, and San Jose Crane & Rigging, Inc. were insured for property damage under an "all-risk" policy provided by defendant Lexington Insurance Company. On February 16, 1986, Giguere and Equipco, working through their broker, submitted a claim to Lexington for loss of the crane. That claim was orally denied shortly after June 5, 1986. In July Giguere threatened to sue, and the insurer requested additional time to obtain a coverage opinion and reconsider the claim. It denied the claim again on August 25. The brokers then submitted additional information to insurer and requested another reconsideration. This also was denied, in writing, on October 30, 1986. After further negotiation, insurer denied the claim a fourth time on December 16, 1986.

Plaintiffs filed suit 15 days later, on December 31, 1986, 1 year and 17 days after the first sulfur was seen on the crane's outrigger supports. Their insurance policy contained the standard one-year suit provision first adopted by the Legislature in 1909 as part of the "California Standard Form Fire Insurance Policy." (See Ins. Code, §§ 2070, 2071.) It read: "No suit, action, or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim . . . ."

## DISCUSSION

In *Prudential-LMI Com. Insurance* v. *Superior Court, supra*, 51 Cal.3d 674 (hereafter *Prudential-LMI*), the Supreme Court was called upon to decide when the standard one-year limitation period contained in all fire policies begins to run in a first party progressive property damage case. It held that it begins to run "when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Id.*, at p. 687.) The court further held that the determination of when appreciable damage occurs is a factual matter to be decided by the trier of fact. (*Ibid.*)

In the present case, plaintiffs contend they were not appreciably damaged until January 23, 1986, when the manufacturer told them the crane was irreparable. Prior to that time, the crane appeared to "look[] fine" except for cab damage which was stipulated to be under the deductible amount and therefore not an insured loss. Furthermore, since pure sulfur does not corrode metal, plaintiffs were not on notice that corrosion was occurring. Insurer, on the other hand, contends that plaintiffs were appreciably damaged no later than December 24, 1985, when the crane was completely buried under the sulfur pile with the cab crushed. ■ The question of "when appreciable damage occurs such that a reasonable insured would be on notice of a potentially insured loss is a factual matter for the trier of fact," and the court erred in taking this issue away from the fact finder. (*Prudential-LMI, supra,* 51 Cal.3d at p. 687.)

The court in *Prudential-LMI* also considered the issue of whether "a rule of equitable tolling [should] be imposed to postpone the running of the one-year suit provision from the date notice of loss is given to the insurer until formal denial of the claim." (51 Cal.3d at p. 678.) The court noted that "in other jurisdictions that have the identical statutory scheme as California," (*id.,* at p. 687) two divergent views have developed. Some states strictly interpret the standard limitations clause while others, in particular New Jersey, Michigan and Nevada, have devised rules to equitably toll the limitation period until an insurer's formal denial of the claim. (*Id.,* at p. 688; see cases cited therein.) A third group of states have modified the statutory scheme, either to extend the statutory period by an additional year or to toll the limitation period from the date proof of loss is filed until the date the claim is denied.

■ The *Prudential-LMI* court determined that the better rule was that announced in *Peloso* v. *Hartford Fire Insurance Co.* (1970) 56 N.J. 514 [267 A.2d 498, 501]. Therein, the New Jersey Supreme Court held that the "fair resolution of the statutory incongruity is to allow the period of limitation to run from the date of the casualty but to toll it from the time an insured gives notice until liability is formally declined." (*Id.,* at p. 501.) Like the *Peloso* court, the *Prudential-LMI* court concluded that "the Legislature's intent to provide insureds with a full year (excluding the tolled period) in which to commence suit can be inferred from the fact that the period provided by section 2071 is considerably shorter than the usual four years for ordinary contracts (Code Civ. Proc., § 337) and ten years for an action against developers for property damage caused by latent defects. [Citations.]" (*Prudential-LMI, supra,* 51 Cal.3d at p. 691.)

Application of the equitable tolling doctrine in the instant case reveals that plaintiffs' action was timely filed. Plaintiffs submitted their claim on

February 16, 1986, and insurer denied liability 109 days later. The running of the limitation period was tolled for these 109 days and did not expire until, at the earliest, April 2, 1987. (This presupposes the jury finds that plaintiffs suffered appreciable damage on the very first day sulfur began to encroach on the crane's outrigger supports, December 14, 1985.) Since plaintiffs' action was filed on December 31, 1986, it was timely.

We recognize that the court in *Prudential-LMI* limited its decision to "first party progressive property loss cases in the context of a *homeowner's* insurance policy" (51 Cal.3d at p. 679; italics added) while this action is a first party progressive property loss case in the context of a *commercial* insurance policy. The court explained it was limiting its holding because, as explained in *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 405-408 [257 Cal.Rptr. 292, 770 P.2d 704]) "there are substantial analytical differences between first party property policies and third party liability policies." (*Prudential-LMI, supra,* 51 Cal.3d at p. 679.) Later in the opinion, in a section dealing with allocation of indemnity between successive first party insurers, the court again "[kept] in mind the important distinction that must be made in a causation analysis between first party property damage cases and third party liability cases." (*Id.*, at p. 694.)

In *Garvey*, the court noted that the causation analysis in a first party property case is substantially different from that in third party liability cases. In first party property cases, the right to coverage comes from the terms of the contract, i.e., it turns on determining causation of a loss and identifying whether it is covered or excluded. In contrast, "the right to coverage in the third party liability insurance context draws on traditional tort concepts of fault, proximate cause and duty." (*Garvey* v. *State Farm Fire & Casualty Co., supra,* 48 Cal.3d at pp. 406-407.)

There is no distinction drawn in *Garvey* between a first party homeowner's property damage case and a first party commercial property damage case. In each case, insurance coverage turns on determining causation of a covered loss; for losses involving multiple causes, the task is one of identifying the most important cause and attributing the loss to that cause. (48 Cal.3d at p. 406.)

We see no reason why the rules announced in *Prudential-LMI* should not apply with equal force here. The apartment building owners in *Prudential-LMI* and the crane owners here were each insured for property damage or loss under an all-risk policy issued by the defendant insurer. Each expected coverage for the perils enumerated; each was obligated to give written notice to the insurer within 60 days after a loss; the rights and duties of both

insured and insurer were set forth in the parties' agreements. These were industry-wide, standardized contracts. Additionally, the policy reasons for equitable tolling are equally compelling here: it is simply unfair "that an insured must file a lawsuit before the insurer has completed its investigation and denied the claim . . . ." (51 Cal.3d at p. 687.) Accordingly, we hold that the doctrine of equitable tolling applies not only to first party claims in the context of homeowner's all-risk policies but also to first party claims in the context of commercial all-risk policies.

Finally, we decline defendant's invitation to apply the rule of equitable tolling, as set forth in *Prudential-LMI*, prospectively only. Defendant points out that a "well-recognized exception to [the general rule that judicial decisions *are* given retrospective effect] is that, where a constitutional provision or statute has received a given construction by a court of last resort and contracts have been made or property rights acquired under and in accordance with its decision, such contracts will not be invalidated nor will vested rights acquired under the decision be impaired by a change of construction adopted in a subsequent decision. Under those circumstances it has been the rule to give prospective, and not retrospective, effect to the later decision." (*County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 681 [312 P.2d 680].)

Defendant claims that "[n]umerous California decisions had applied and construed the one year suit provision without applying any rule of equitable tolling" and cites as examples *Abari* v. *State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530 [252 Cal.Rptr. 565] and *Lawrence* v. *Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565 [251 Cal.Rptr. 319]. Neither of these cases, however, support defendant's proposition. In both cases the insureds became aware of potential benefits under their policies *after* the one-year statute had run. (In *Abari* the loss occurred some time before November 20, 1982, when the insurance policy expired; Abari submitted his claim in 1985. In *Lawrence*, the progressive loss occurred between 1975 and 1983; he submitted his claim in July 1985.) The doctrine of equitable tolling comes into play only when an insured promptly files a claim within the one-year period.

Defendant has cited no prior California case construing the one-year suit provision to preclude application of the equitable tolling doctrine. Thus, unlike the situation in *County of Los Angeles* v. *Faus, supra*, 48 Cal.2d 672, the one-year limitation period "has [not] received a given construction by a court of last resort" and, therefore, "contracts have [not] been made or property rights acquired under and in accordance with [a prior] decision . . . ." (*Id.*, at p. 681.) In short, *Prudential-LMI* did not overrule prior law.

Rather, it declared *existing* law by interpreting the Legislature's intent when it enacted the one-year provision 82 years ago and when it amended it 40 years later. The court noted that the 1949 amendment was made to make it consistent with the "Model New York Standard Fire Form Policy" which had been adopted by 45 of the 48 states. (*Prudential-LMI, supra,* 51 Cal.3d at p. 682.) Many states have interpreted this standard policy provision so as to toll the one-year period from the time insured gives notice of the loss until insurer formally denies liability. (See e.g., *Peloso* v. *Hartford Fire Insurance Co., supra,* 267 A.2d 498 (New Jersey); *Clark* v. *Truck Ins. Exchange* (1979) 95 Nev. 544 [598 P.2d 628] (Nevada); *Tom Thomas Organization* v. *Reliance Ins. Co.* (1976) 396 Mich. 588 [242 N.W.2d 396] (Michigan); *Nicholson* v. *Nationwide Mut. Fire Ins. Co.* (N.D.Ga. 1981) 517 F.Supp 1046 (Georgia); *Decell* v. *Northwestern Nat. Ins. Co.* (D.Nev. 1983) 570 F.Supp. 431.) ■ It is well settled that decisions of sister state courts are particularly persuasive when those decisions construe similar statutes or a uniform act. (*Estate of Butler* (1947) 29 Cal.2d 644, 651 [177 P.2d 16, 171 A.L.R. 343].)

■ Here, the *Prudential-LMI* court concluded that the Legislature intended to give insureds a full year, not including the tolled period, in which to commence suit and that this intent could be inferred from the fact that the limitation period in a statutory standard form fire insurance policy is only one-quarter as long as the limitation period for ordinary contracts. (51 Cal.3d at p. 691.) Because this opinion does not overrule a prior decision and because it is merely a declaration of existing law, there is no issue as to whether it should be given retroactive application.

The judgment is reversed. Costs are awarded to appellant.

Agliano, P. J., and Premo, J., concurred.