[No. B115453. Second Dist., Div. Five. Aug. 12, 1999.]

ORLANDO ALIBERTI, Plaintiff and Appellant, v.
ALLSTATE INSURANCE COMPANY et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Discussion parts 1 and 3.

## COUNSEL

Richard L. Grimwade for Plaintiff and Appellant.

Sonnenschein, Nath & Rosenthal, Ronald D. Kent and Jeffry Butler for Defendants and Appellants.

## OPINION

**GODOY PEREZ, J.**—Plaintiff Orlando Aliberti appeals from the judgment entered in favor of defendants Allstate Insurance Company and Alvin Williams. Allstate has cross-appealed from a pretrial order denying its motion for leave to file a cross-complaint. For the reasons set forth below, we reverse the judgment. As a result, we dismiss as premature Allstate's cross-appeal.

### FACTS AND PROCEDURAL HISTORY

Plaintiff and appellant Orlando Aliberti (Aliberti) owned a six-unit apartment building on Rambla Vista Road in Malibu (the building). His personal home was located nearby on the same piece of land. As of April 1990, both the building and Aliberti's home were insured for fire loss under separate policies issued by defendant and respondent Allstate Insurance Company (Allstate). Aliberti obtained the policies through defendant and respondent Alvin Williams of Allstate, his insurance agent since 1986.[1] When first issued in 1990, the policy on the building (the apartment policy) had a structural damage limit of $271,000. The apartment policy was renewed yearly and by November 1993 had a structural damage limit of $317,000.

Both the building and Aliberti's home were destroyed on November 2, 1993, by a brushfire which raged through the Malibu area. Aliberti notified Allstate of his loss on November 3, 1993. Allstate brought in adjuster Bobby Alphin from Texas to handle Aliberti's claim.

Aliberti and Alphin met on November 9, 1993, to discuss Aliberti's claim. When Alphin mentioned that the apartment policy's limit was $317,000, Aliberti said that was not enough to rebuild.[2] Aliberti, who was about to leave for Maui, said his daughter, Elaine Aliberti, would be dealing with Allstate on his behalf.[3]

On November 10, 1993, Allstate issued a check to Aliberti for the apartment policy's $317,000 limit. The check bore the notation "paid in

[1]We will sometimes refer to Allstate and Williams collectively as respondents.

[2]It is undisputed that the apartment policy limits were well below the cost of rebuilding. Aliberti contends those costs will exceed $1 million.

[3]For ease of reference, we will refer to Elaine Aliberti as Elaine.

full." Elaine sent the check back, contending the apartment policy was supposed to provide a replacement guarantee which would cover the full cost of rebuilding. Alphin's claim diary also shows that Elaine believed the building had not been insured to its proper value. In order to assure Elaine that her father would not be waiving any rights he might have against Allstate, Alphin reissued the check on December 15, 1993. This check bore the notation: "UNDISPUTED AMOUNT, POLICY LIMITS, ON APARTMENT STRUCTURE FIRE ON OR ABOUT 11/2/93."

Throughout this time, Alphin repeatedly said Allstate could not pay more than the apartment policy limit of $317,000. Elaine argued that Allstate owed an additional 10 percent under an inflation protection clause in the apartment policy. Even though that clause did not in fact apply, Allstate issued another check for $31,700 on December 23, 1993. Alphin's claim diary for December 21, 1993, states that the additional payment was approved "due to the circumstances and insured's apparent feelings over limits . . . ." in order to give him "the benefit of the doubt . . . in a good faith effort to satisfy insured." During that phone conversation, Elaine requested a copy of Aliberti's original application for the apartment policy.

Elaine phoned Alphin again on January 28, 1994. According to Alphin's claim diary, she still contended the policy contained a replacement cost guarantee. Alphin explained that it did not and told her he could not pay any more on the building. After that date, Alphin had no further conversations with either Aliberti or Elaine about the structural limits on the apartment policy and considered that claim closed as of the time he issued the second check for $31,700. Even so, Alphin and Allstate still continued to adjust Aliberti's claim for lost rental income under another coverage portion of the apartment policy. An Allstate computer printout form shows that Allstate made its final payment on the lost rental claim on September 7, 1994, and closed the file at that time. Aliberti also testified that Allstate was still adjusting his claim for the loss of his home during that period.[4]

On December 22, 1993, one day after Alphin said he considered the structural damage claim closed, he wrote Elaine about the lost rental coverage, asking her to contact him about the payment of such benefits during the restoration period after she found a builder. That letter was prefaced, however, by Alphin's statement that he was including a copy of Aliberti's original 1990 application for the apartment policy, noting that the amount of insurance requested was $271,000. He concluded the letter by stating: "Give me a call at any time if you have any questions on this loss." It is undisputed that Allstate never gave written notice it was denying any claim by Aliberti

---

[4] Alphin was not the adjuster handling Aliberti's separate claim for the loss of his home.

that he had been inadequately insured by respondents for structural damage to the building.

Aliberti filed a complaint against Allstate with the California Department of Insurance in May 1995, contending that he had been underinsured. On November 1, 1995, Aliberti sued Allstate and Williams for fraud, negligent misrepresentation, negligence and breach of fiduciary duty. The gist of the complaint was that respondents improperly valued the building and that he relied on their advice when selecting his coverage limits.

Pursuant to Insurance Code section 2071, the apartment policy provided that Aliberti had one year after the inception of any covered loss to bring an action on the policy.[5] That abbreviated limitations period may be deemed equitably tolled while the insurer investigates a claim and until the claim is denied. (*Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674, 687-693 [274 Cal.Rptr. 387, 798 P.2d 1230], hereafter *Prudential*.) Since Aliberti did not sue until two days before the second anniversary of the fire that destroyed the building, Allstate moved to bifurcate the trial so the court could first try the issue whether Aliberti's action was barred by the one-year limitations period or whether that period had been equitably tolled.[6]

Aliberti opposed the motion to bifurcate on the following grounds: (1) his action for Allstate's conduct in underinsuring the building was not an action on the policy within the meaning of section 2071; and (2) even if it were, the one-year period was still equitably tolled when he filed the complaint since it was undisputed that Allstate never denied his claim in writing, as required by *Prudential*.

The trial was eventually scheduled to begin October 22, 1996. Allstate's bifurcation motion was argued on October 22 and October 23, 1996. Aliberti's lawyer told the court the case pivoted around a conversation between Aliberti and Williams at the time Aliberti applied for the apartment policy where Aliberti asked for adequate insurance and Williams assured him of such coverage. Combined with the fact that the policy limits had been paid in full, Aliberti contended his action was not on the policy within the meaning of section 2071.

---

[5] Insurance Code section 2071 sets forth numerous provisions, which must be included as part of the standard form fire insurance policy, including the contractual, one-year limitation period at issue here: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss." For ease of reference, we will hereafter refer to Insurance Code section 2071 as section 2071.

[6] It is undisputed that the court and not a jury should have tried this equitable issue. (*Getty* v. *Getty* (1986) 187 Cal.App.3d 1159, 1176 [232 Cal.Rptr. 603].) The court's decision to bifurcate that issue has also not been challenged on appeal.

Aliberti repeatedly and strenuously argued that before trying the issue of the section 2071 limitations period, the court first had to reach the threshold issue whether his action was one on the policy to which section 2071 applied. When the court asked Aliberti's lawyer what limitations period applied to the complaint, the lawyer answered that the two-year statute for professional negligence claims set forth in Code of Civil Procedure section 339, subdivision 1 established the proper limitations period.

The court then asked respondents' lawyer whether the bifurcated trial would be on the elements of Aliberti's negligence claim. Respondents' lawyer replied: "No. That would only be if plaintiff gets over the statute of limitations issue . . . [with the issue being] . . . is there evidence that Allstate said something or did something that would leave [*sic*] a reasonable insured to believe that we are going to pay some more money or somehow the claim is going to stay open indefinitely and that's a simple discrete issue."

Aliberti's lawyer said he wanted any order to reflect that the court had been asked to determine whether the action was on the policy under section 2071. After further argument on that point, the following exchange took place between the court and Aliberti's lawyer: "[Aliberti's lawyer]: But it didn't change this provision, your Honor, that requires a finding by this Court that the action is on the policy. [¶] THE COURT: That's the finding." The court then granted the bifurcation motion and began its trial of the statute of limitations issue.

During the presentation of Aliberti's case, he submitted briefs and put on evidence about the alleged conversation with Williams in which Aliberti sought and Williams promised to provide adequate insurance coverage for the building. It is undisputed that this evidence, and its attendant inferences, were very much in conflict.[7] Aliberti contends on appeal that he introduced that evidence to persuade the court that his action was not on the policy under section 2071.[8]

---

[7]In addition to Aliberti's testimony about his conversation with Williams, Williams denied ever making the statement attributed to him in Alphin's claim diary that Aliberti was fully aware of the initial $271,000 policy limit since Aliberti requested it. Williams also testified that he calculated the $271,000 figure. When examined by Allstate's counsel, however, Williams testified that Aliberti applied for $271,000 in coverage back in 1990. Respondents' cross-examination of Aliberti revealed that even though Allstate insured several properties for him, Aliberti only sought assurances that the building would receive adequate coverage. He did so in 1990 based on a 1988 incident which left the building uninsured.

[8]Respondents do not contend that Aliberti's complaint would have been barred in any event by some other limitations period if his action had not been on the policy under section 2071. Were we to hold that the action was not on the policy, we would be compelled to reverse the

When Aliberti rested, respondents moved for judgment under Code of Civil Procedure section 631.8.[9] The parties argued whether the one-year limitations period of section 2071 had been tolled and whether Allstate's oral communications gave sufficient notice that it had denied Aliberti's claim to increased policy benefits. Respondents also asked the court to determine the factual issues surrounding Aliberti's conversation with Williams about providing adequate insurance. Noting that the court permitted evidence about that conversation to come in over Allstate's objections, combined with Aliberti's references to that evidence in his opposition to the motion for judgment, Allstate argued that the issue was properly before the court. Aliberti objected, pointing out that resolution of that issue required the court to make findings on disputed factual matters, which were meant for the jury, not the court, to decide. The only issue properly before the court in the bifurcated trial was whether and to what extent the doctrine of equitable tolling applied to the section 2071 limitations period, Aliberti argued. After hearing further argument, the court granted Allstate's motion for judgment.

The court issued its statement of decision on May 8, 1997, finding that Allstate, through Alphin, had unambiguously communicated its refusal to pay any more under the apartment policy's structural damage coverage on each of the following three dates: (1) December 23, 1993, when Allstate paid an additional 10 percent under the apartment policy's inflation protection clause; (2) January 28, 1994, when Alphin's claim diary showed he told Elaine Allstate would pay no more on the building; or (3) September 7, 1994, when Allstate made its final payment under the apartment policy's loss of rental income coverage. Nothing Allstate did or said could have led Aliberti to conclude that Allstate had not made a final decision on his claim, the court found. As a result, the court found that Aliberti's action was barred under section 2071 by the apartment policy's one-year limitations period.

The statement of decision went on to consider the evidence about Aliberti's adequacy of coverage discussion with Williams at the time Aliberti first took out the apartment policy. Before reaching those disputed factual issues, the court addressed the propriety of doing so: "[G]iven that plaintiff argued the special duty issue in the context of the statute of limitations, plaintiff had ample opportunity to elicit evidence relevant to the issue and plaintiff actually proffered testimony and documentary evidence on the issue, it is fair and appropriate to consider the duty issue at this time in light of an

judgment. For purposes of our decision we merely assume, but do not decide, that respondents are correct and that a claim such as Aliberti's is one on the policy for purposes of section 2071.

[9]That section permits a party in a court trial to make a motion for judgment after the opposing party finishes its presentation of the evidence. (Code Civ. Proc., § 631.8, subd. (a).)

adequately developed record." The court then went on to weigh and consider that evidence, finding Aliberti's account not credible, leaving the court unpersuaded "that [Allstate] knew or should have known of [Aliberti's] alleged reliance on them to provide 'adequate' insurance."

Judgment for Allstate and Williams was entered May 8, 1997. This timely appeal followed. While numerous issues were raised on appeal, we address only the two which we hold are dispositive and compel reversal: (1) whether the court erred in deciding the factual issues surrounding Aliberti's alleged conversation with Williams which gave rise to this action; and (2) whether Allstate properly notified Aliberti it was denying his claim for inadequate coverage.

DISCUSSION

1. *A Jury Trial Was Required on the Duty Issue**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Allstate's Failure to Deny the Claim in Writing*

■ The purpose behind the shortened limitations period required by section 2071 is to relieve insurance companies of the burden imposed by defending old, stale claims. (*Prudential, supra,* 51 Cal.3d at p. 684.) It was designed "to obtain the advantage of an early trial of the matters in dispute and to make more certain and convenient the production of evidence on which the rights of the parties depended . . . . [Citation.]" (*Id.* at p. 691, citing *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 408-410 [154 P.2d 399].) The statute was based on the "Model New York Standard Fire Form Policy" (Sen. Bill No. 1282 (1949 Reg. Sess.)) and was eventually adopted by California and a majority of state legislatures. (*Prudential, supra,* 51 Cal.3d at pp. 682-683.)

The section was not intended, however, "to achieve a technical forfeiture of the insured's rights by enforcing the limitation provision when the insured has given timely notice of a claim to his insurer. [Citation.]" (*Prudential, supra,* 51 Cal.3d at p. 691.) Since it would be anomalous to bar an insured's suit against an insurer because the one-year limitations period ran while the claim was being investigated, the *Prudential* court held that the limitations period was equitably tolled "from the time the insured files a timely notice, pursuant to policy notice provisions, to the time the insurer formally denies

---

*See footnote, *ante*, page 138.

the claim in writing." (*Prudential, supra,* 51 Cal.3d at p. 678.)[12] The insurer in *Prudential* first sent a letter proposing that coverage be denied unless the insureds had additional information. It was not until the insurer sent a letter which the *Prudential* court described as "formal written notice that their claim had been denied" (*Id.* at p. 680), "that [the] plaintiffs' claim was denied unequivocally." (*Id.* at p. 692.)

The court held that equitable tolling would not contravene the policy of encouraging early trials "or work a hardship on the insurer, whose investigation will necessarily have preceded the denial of coverage." (*Prudential, supra,* 51 Cal.3d at p. 691.) Instead, equitable tolling would nicely balance the interests of both insured and insurer. First, the claims process would function normally since the insured would not have to file suit before the insurer completed its investigation. Second, the insured's reasonable expectations would be met, since the carrier would have to investigate the claim rather than defeat it by invoking a technical rule. Third, equitable tolling would encourage settlement and discourage needless litigation. (*Id.* at p. 692.)

 The question we must decide is whether the *Prudential* court meant what it said when it held that the one-year statute was tolled "to the time the insurer formally denies the claim in writing." (*Prudential, supra,* 51 Cal.3d at p. 678, italics added.) We hold that it did.

In establishing the rule of equitable tolling, the *Prudential* court expressly chose one line of out-of-state cases over another and adopted the reasoning of the New Jersey Supreme Court in *Peloso v. Hartford Fire Ins. Co.* (1970) 56 N.J. 514 [267 A.2d 498] (hereafter *Peloso*). In construing New Jersey's own one-year policy limitations period, the *Peloso* court advanced the same policy reasons for the equitable tolling doctrine which the *Prudential* court later adopted. (*Id.* at pp. 520-521 [267 A.2d at p. 501].) To effectuate those policies, the *Peloso* court held that the one-year limitations period was tolled "from the time an insured gives notice until liability is formally declined" and held the statute was tolled until the date "when plaintiffs were notified in writing that liability was denied." (*Id.* at pp. 520-522 [267 A.2d at pp. 501-502].)

Later decisions interpreting *Peloso* make clear that the insurer must unequivocally deny a claim in writing to halt the equitable tolling period.

---

[12]Respondents do not contend that Aliberti did not timely and properly make a claim based on allegations that he was inadequately insured. There was also evidence at trial to show that Allstate was aware Aliberti made such a claim, including the entries in Alphin's claim diary, which we set forth in the statement of facts. For purposes of our decision, we therefore assume that Aliberti properly notified Allstate of his claim.

(*Ali, Inc. v. Generali* (D.N.J. 1997) 954 F.Supp. 118, 120-121 [applying New Jersey law, the court held a letter which expressly denied coverage was sufficient under *Peloso* but need not include the reasons for the decision, notification of the one-year limitations provision, or advice to obtain counsel]; *International School Services* v. *Northwestern Nat.* (S.D.N.Y. 1989) 710 F.Supp. 86, 89 [under New Jersey law as announced in *Peloso*, the one-year limitations period is tolled until a claim is formally denied in writing].) The decisions of sister-state courts interpreting their versions of section 2071 are "particularly persuasive." (*San Jose Crane & Rigging, Inc.* v. *Lexington Ins. Co.* (1991) 227 Cal.App.3d 1314, 1321 [278 Cal.Rptr. 301] (hereafter *San Jose Crane*).)

California decisions interpreting *Prudential* and *Peloso* strongly suggest that the insurer must deny a claim in writing to halt the equitable tolling period. The court in *Forman* v. *Chicago Title Ins. Co.* (1995) 32 Cal.App.4th 998, 1002-1004 [38 Cal.Rptr.2d 790], applied the *Prudential-Peloso* reasoning in holding that the two-year statute of limitations (Code Civ. Proc., § 339, subd. 1) was equitably tolled until a title insurer sent its insured a letter denying liability. In *Singh* v. *Allstate Ins. Co.* (1998) 63 Cal.App.4th 135 [73 Cal.Rptr.2d 546] (hereafter *Singh*), the court considered whether the equitable tolling period applied to an insurer's decision to reconsider a previous unequivocal written denial of its insured's claim. The plaintiffs' claim in *Singh* was held to have been unequivocally denied when the insurer sent a letter denying the claim, which stated the reasons for the denial and informed the insured of the one-year limitations period. (*Id.* at pp. 138, 148.)[13]

Respondents point to only one reported decision to support their contention that no written notice of denial was required—*San Jose Crane, supra,* 227 Cal.App.3d 1314. The insured in *San Jose Crane* submitted a claim to its insurer on February 16, 1986. The insurer orally denied the claim on June 5, 1986, again on August 25, 1986, and yet again on December 30, 1986. The claim was denied in writing once—on October 30, 1986. In reversing a summary judgment for the insurer, the appellate court stated that the policy's limitations period had been equitably tolled from the time the claim was filed until the "insurer denied liability 109 days later." (*Id.* at pp. 1318-1319.) Because the insurer's June 5 oral denial was 109 days after the claim was filed, respondents contend that Allstate's oral denials of Aliberti's claim were sufficient to stop the equitable tolling period.

---

[13]Aliberti contends that an insurer's formal written denial must include the same information contained in the *Singh* denial letter. Since no formal written notice of denial was given here, we need not decide that question. Allstate's failure to send any formal, written denial compels reversal even absent the other information.

We have cautioned before that "the language of an opinion must be construed in light of the facts of the particular case, an opinion's authority is no broader than its factual setting and the parties cannot rely on a rule announced in a factually dissimilar case. [Citation.] Parties and counsel were warned to take care that they do not take a passage out of context and analyze it ' ". . . as a Shakespeare scholar would, or as though it were a verse from Holy Writ, discovering hidden meanings, innuendoes, and subtleties never intended." ' " (*Cochran* v. *Cochran* (1997) 56 Cal.App.4th 1115, 1121 [66 Cal.Rptr.2d 337].) With this warning in mind, an exegesis of *San Jose Crane* makes clear its inapplicability.

The two key issues before the court in *San Jose Crane* were: (1) whether *Prudential* could be applied to commercial all-risk insurance policies as well as homeowners insurance policies; and (2) if so, whether *Prudential* should be applied prospectively to claims submitted after that decision. The defendant insurer conceded that the plaintiff's action had been timely filed if the equitable tolling doctrine of *Prudential* were applicable. (*San Jose Crane, supra,* 227 Cal.App.3d at pp. 1315-1316.) Thus, any statement by the San Jose Crane court about the required form of an insurer's notice of denial is at best dicta.[14] Nor are we the first court to so distinguish *San Jose Crane.* (*Imperial Resource Recovery Assoc.* v. *Allendale Mut.* (N.D.N.Y. 1995) 878 F.Supp. 434, 437, fn. 3 [applying California law, held that *Prudential-Peloso* required an unequivocal, written denial; rejected applicability of *San Jose Crane* because the plaintiffs' lawsuit was timely using the first, oral denial and plaintiff did not consider or set forth any argument about the later denials].)

We therefore choose to take the Supreme Court at its word when it adopted *Peloso* and held that the section 2071 limitations period is tolled from the time a claim is filed with the insurer "to the time the insurer formally denies the claim in writing." (*Prudential, supra,* 51 Cal.3d at p. 678.) The facts of this case illustrate why this promotes the policy reasons behind the equitable tolling rule.

First, Aliberti claimed that even though the policy limits were being paid, respondents had breached their duties under *Free* v. *Republic Ins. Co.* (1992) 8 Cal.App.4th 1726 [11 Cal.Rptr.2d 296] by providing inadequate coverage. Alphin's statements that Allstate would not pay more because of the policy

---

[14]Furthermore, the *San Jose Crane* court noted that the *Prudential* court adopted the reasoning of *Peloso,* which required "formal denial" of a claim, then expressly adopted the reasoning of *Prudential.* (*San Jose Crane, supra,* 227 Cal.App.3d at pp. 1318-1320.) To the extent *San Jose Crane* can be read as properly holding that an insurer's oral denial of a claim is sufficient to end the period of equitable tolling, we decline to follow it.

limits did not respond to this claim, but merely begged the question, which Aliberti raised. Second, Allstate's conduct was subject to differing interpretations.[15]

While respondents contended and the trial court agreed that the evidence showed Aliberti knew his claim had been denied, the need to resolve such evidentiary conflicts is entirely eliminated by requiring the insurer to deny a claim clearly and unequivocally in writing. Doing so places little or no burden on the insurer, which obtains in return the certainty of knowing that the equitably tolled period has ended. Accordingly, we hold the trial court erred in finding that the apartment policy's one-year limitations period expired before Aliberti filed his complaint. Instead, that period remained equitably tolled because Allstate never formally and unequivocally denied Aliberti's claim in writing.

3. *Allstate's Cross-appeal**

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

For the reasons set forth above, the judgment is reversed. Allstate's cross-appeal is dismissed. Appellant and cross-respondent Aliberti to recover his costs on appeal.

Grignon, J., concurred.

**TURNER, P. J.**—I concur in the entirety of my colleagues' opinion and the judgment. I believe though it bears emphasis that defendants have forfeited, by the failure to brief the issue, the right to argue the issue of whether plaintiff waived his jury trial arguments by not raising them before the trial

---

[15]For example, Alphin first had Allstate issue a check stating the claim was paid in full, then reissued a check bearing a notation that the "UNDISPUTED AMOUNT, POLICY LIMITS" had been paid in order to assure Elaine that Aliberti would not waive any rights he might have against Allstate. Later, after first saying Allstate would not pay more than the policy limits, Allstate agreed to pay an additional 10 percent under coverage it considered inapplicable "due to the circumstances and insured's apparent feelings over limits . . . ." At the same time Alphin was saying Allstate would only pay the policy limits, he was continuing to adjust the rest of Aliberti's claim for lost rental income under another section of the apartment policy. Two days after making the additional 10 percent payment for structural damage, Alphin sent a letter which addressed both the lost rental and inadequate coverage claims by including a copy of Aliberti's 1990 application for the apartment policy, stating that Aliberti had applied for $271,000 in coverage, then going on to address the future resolution of the lost rental income claim.

*See footnote, *ante*, page 138.

judge. (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686], disapproved on another point in *Bailey* v. *County of Los Angeles* (1956) 46 Cal.2d 132, 139 [293 P.2d 449].)

The petition of defendants and appellants for review by the Supreme Court was denied November 10, 1999. Mosk, J., was of the opinion that the petition should be granted.