Filed 1/7/14  Kallman v. State Farm General Insurance CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ANDREW KALLMAN, et al., | B243272 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC110220) |
| v. | |
| STATE FARM GENERAL INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cesar C. Sarmiento and Jacqueline A. Connor, Judges.  Reversed.

Hamrick and Evans, George Knopfler and James Pazos for Plaintiffs and Appellants.

LHB Pacific Law Partners, Michael J. McGuire and Matthew F. Batezel for Defendant and Respondent.

_____

## INTRODUCTION

Appellants Andrew and Frances Kallman appeal from the judgment entered upon the trial court's order granting respondent State Farm General Insurance Company's motion for summary judgment. Appellants filed a complaint against State Farm, alleging causes of action for breach of contract and breach of the covenant of good faith and fair dealing, arising out of State Farm's settlement of appellants' homeowners insurance claim. State Farm moved for summary judgment on the ground that appellants' action was barred by the one-year statute of limitations contained in appellants' insurance policy. The trial court granted State Farm's motion, finding that the statute of limitations began to run more than one year before appellants initiated suit against State Farm.

On appeal, appellants argue that the trial court erred in granting State Farm's motion for summary judgment. Specifically, appellants contend the statute of limitations remained equitably tolled from the time they filed their insurance claim with State Farm on August 23, 2007, until the time they initiated the present action on November 3, 2010. For the reasons set forth below, the trial court's judgment is reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Appellants' Insurance Policy

In January of 2007, appellants purchased a homeowners insurance policy ("the policy") from State Farm, which insured appellants' home during the period of January 17, 2007, to January 17, 2008.[1] The policy covered payments for the repair of certain damages to appellants' home ("Coverage A") and personal property ("Coverage B"), as well as additional living expenses – i.e., rent for temporary housing – incurred by appellants as a result of damages covered by the policy ("Coverage C"). Specifically, Coverage C provided for payment of additional living expenses to maintain appellants' standard of living for the shortest of: "(a) the time required to repair or replace

---

[1] The parties' briefings on appeal state that the policy covered the period of August 6, 2007, to August 6, 2008. However, the copies of the policy contained in the record indicate that the policy covered the period from January 17, 2007, to January 17, 2008.

2

[appellants'] premises; (b) the time required for [appellants'] household to settle elsewhere; or (c) 24 months." The policy also contained a provision informing appellants that a one-year statute of limitations for claims brought against State Farm under the policy would begin to run after the date of a covered loss or damage.

## II. Appellants' Insurance Claim

On or about August 23, 2007, appellants discovered that their fourth-floor water heater had leaked while they were away for a long weekend, causing extensive water damage to their home. Appellants immediately notified State Farm about the damage and submitted a claim under the policy.

On August 24, 2007, State Farm conducted an initial inspection of appellants' property. That same day, appellants had their own contractor inspect their property. According to appellants' contractor, the repairs would take between three and six months to complete.

A few days later, State Farm informed appellants that it would pay up to $20,000 per month to cover appellants' additional living expenses while repairs were being completed. Soon after, State Farm advanced $40,000 to appellants to cover their security deposit and first month's rent for temporary housing.

On August 31, 2007, State Farm conducted another inspection of appellants' property with a contractor from Rossmoyne, Inc. ("Rossmoyne"), the firm State Farm hired to calculate the estimates for appellants' repairs. Rossmoyne's contractor confirmed that the repairs would take approximately six months to complete.

On that same day, State Farm sent appellants a letter outlining additional payments that were potentially qualified under Coverage C. The letter stated that the policy would cover only necessary rental costs during the reasonable expected time of repairs.

On September 10, 2007, State Farm received Rossmoyne's estimate, which called for $247,426.20 worth of repairs to appellants' property. On September 20, 2007, State Farm contacted appellants to discuss Rossmoyne's estimate. Appellants approved the estimate, with the exception that they believed the home's floors needed to be replaced as a result of the water damage.

On September 28, 2007, State Farm sent appellants a number of documents, including: (1) a $247,426.20 check for the undisputed amount of repairs, pursuant to Coverage A; (2) a letter confirming that the repairs were expected to be completed in six months; and (3) a check for $120,000 for additional living expenses, pursuant to Coverage C, to cover the six month period during which the repairs were supposed to be completed.

Per appellants' request, State Farm and Rossmoyne inspected appellants' floors on October 1, 2007, and later approved an additional payment of $30,496.39 to cover their replacement. During the inspection, State Farm informed appellants that the undisputed repairs needed to commence in the near future because State Farm had started making payments.

On November 13, 2007, appellants informed State Farm that they had retained a design firm to assist in the planning, designing, and monitoring of the repair work, and that a separate contractor had completed a $433,419 estimate for the repair work. Appellants also confirmed that they expected the repairs to be completed by August 1, 2008.

On December 26, 2007, State Farm approved additional living expenses under Coverage C through August 1, 2008. State Farm also warned appellants that any time associated with remodeling, redesigning, or renovating their home (i.e., time associated with work outside the scope of necessary repairs) would not be covered under the policy.

On January 21, 2008, after reviewing appellants' $433,419 estimate, Rossmoyne's contractor advised State Farm that the initial $247,426.20 estimate and the $30,496.39 flooring estimate were sufficient to cover appellants' necessary repairs. On February 19, 2008, State Farm sent a letter informing appellants that additional construction costs outside of those covered by Rossmoyne's estimates would not be covered by the policy. State Farm also warned appellants that the policy would not cover the services of an architect or designer because the home had suffered no structural damage and would therefore not require the drafting of additional plans to complete the necessary repairs.

4

The letter also informed appellants of the one-year statute of limitations governing suits brought under appellants' policy.

The following day, State Farm forwarded two more additional payments: one for $30,496.39, to cover the flooring repairs, and the other for $80,000, to cover the family's additional living expenses through August 1, 2008. State Farm also warned appellants that additional living expenses incurred beyond August 1, 2008, may not be covered under the policy. Again, State Farm informed appellants of the statute of limitations provision contained in their insurance policy.

On March 7, 2008, attorney George Knopfler informed State Farm that he had been retained by appellants[2] to pursue potential litigation against State Farm for breach of contract and bad faith actions. State Farm responded with two letters, one on March 25, 2008, and another on April 17, 2008, neither of which Mr. Knopfler, nor appellants, answered. In both letters, State Farm stated its position that it had investigated appellants' claim in good faith and reiterated its opinion that appellants' independent estimate of $433,419 covered costs outside the scope of necessary repairs, which were not covered by the policy.

On May 13, 2008, appellants informed State Farm that they believed the repairs would not be completed until December 1, 2008, four months after the agreed upon date of completion. Due to the parties' prior agreement that repairs would be completed by August 1, 2008, State Farm asked appellants to provide documentation to justify extending the completion date, as well as Coverage C payments, by four months.

On June 3, 2008, Mr. Knopfler responded to State Farm's request. However, Mr. Knopfler only provided his own statements regarding the expected delays. According to Mr. Knopfler, the delays were attributable to inaction by appellants' architect and backlogs in the City's permitting process. State Farm requested that appellants provide

---

[2]     Appellants contend that Mr. Knopfler was retained to represent only Mr. Kallman, and not the Kallmans collectively. However, as discussed below, this issue does not bear on this Court's ruling. Therefore, for the sake of brevity, Mr. Knopfler will be referred to as "appellants'" attorney throughout this opinion.

documents directly from appellants' architect and the City's planning department to verify the delay. Again, State Farm warned appellants that delays associated with redesigning, remodeling, or renovating their home would not be covered by the policy.

On June 25, 2008, Mr. Knopfler replied with another explanation. Again, he provided only his own statements regarding the expected delays, which consisted of a self-compiled list of dates marking milestones in appellants' insurance claim process. In its reply, State Farm again informed Mr. Knopfler that extended coverage under appellants' policy would not be approved without documents sent directly from appellants' architect and the City's planning department. State Farm also restated its belief that the services of an architect were unnecessary, as appellants' policy only covered repairs to the original design of the home, and would not cover any new designs.[3]

On September 25, 2008, State Farm sent Mr. Knopfler another letter requesting documents from appellants' architect and the City's planning department. State Farm warned Mr. Knopfler that it would close appellants' file if they did not provide the requested documents because State Farm believed it had made all undisputed payments on appellants' claim. On November 12, 2008, after receiving no response from appellants or Mr. Knopfler, State Farm sent a closing letter to Mr. Knopfler, informing him that it had closed appellants' file due to their failure to provide the documents necessary to extend payments on their claim. Mr. Knopfler and appellants deny receipt of the closing letter. Appellants did not contact State Farm again for nearly two years.

### III. The Kallmans' Suit Against State Farm

On November 3, 2010, the Kallmans filed suit against State Farm, alleging claims for breach of contract and bad faith. In their complaint, appellants alleged that State Farm breached the insurance contract when it failed to "properly adjust the Claim and

---

[3]     The record includes the results of another inspection performed by Rossmoyne's contractor on July 24, 2008, in which the contractor indicated that appellants were making significant additions and improvements to the original design of their home.

pay out policy benefits to [appellants] in connection with the loss that occurred to [their property]." Appellants also alleged that State Farm acted in bad faith in handling appellants' claim.

State Farm filed a motion for summary judgment, arguing that the statute of limitations for filing a claim under appellants' policy had expired prior to initiation of the present action. Appellants opposed State Farm's motion for summary judgment, arguing that the statute of limitations had remained tolled from the time they filed their claim with State Farm on August 23, 2007, claiming they never received State Farm's closing letter.

## IV.    The Trial Court's Decision

The trial court granted State Farm's motion for summary judgment on the ground that the one-year statute of limitations for appellants' claims against State Farm had expired. The trial court based its ruling on two alternative grounds. First, the court found that appellants failed to present a triable issue of fact to show that they never received State Farm's closing letter. Alternatively, the trial court found that even if appellants never received State Farm's closing letter, the undisputed evidence showed as a matter of law, the statute of limitations began to run prior to November of 2008, following State Farm's repeated warnings that it would close appellants' file if they did not provide the requested documents. After granting summary judgment on the breach of contract claim, the trial court declined to rule on appellants' bad faith cause of action.

This appeal followed.

## DISCUSSION

## I. Standard of Review

On appeal from a grant of summary judgment, we review the record and the ruling of the trial court de novo. (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 334.) In doing so, we consider all the evidence set forth in the moving and opposition papers, except that evidence to which objections have been made and sustained. (*Ibid*.) The reviewing court must view all evidence and consider all reasonable inferences in a light most favorable to the non-moving party. (*Agular v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party bears the burden of establishing, through

7

declarations and evidence, a complete defense to the non-moving party's action or the absence of a material fact of the non-moving party's case. (*1231 Euclid Homeowners Ass'n v. State Farm Fire and Cas. Co.* (2006) 135 Cal.App.4th 1008, 1017.) A grant of summary judgment is proper if the evidence set forth shows that there is no triable issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. (Code Civ Proc., § 437c, subd. (c); see also *Guz v. Bechtel Nat. Inc.*, *supra*, 24 Cal.4th at p. 334.)

When reviewing a grant of summary judgment, we follow the same procedure as the trial court in determining whether the opposing party has established the existence of a triable issue of material fact. (*Oakland Raiders v. National Football League*, (2005) 131 Cal.App.4th 621, 630.) In doing so, we are not bound by the reasons given by the trial court in granting summary judgment; "we review the ruling of the trial court, not its rationale." (*Ibid.*; see also *Davey v. Southern Pac. Co.* (1897) 116 Cal. 325, 329 ["No rule of decision is better or more firmly established by authority . . . than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason"].)

## II. Applicable Law

As required by statute, homeowners insurance policies must advise a policyholder that he has one year from the date of his loss to file suit against his insurance provider. (See *Singh v. Allstate Ins. Co.* (1998) 63 Cal.App.4th 135, 140.) In *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, the California Supreme Court held that the one-year statute of limitations is equitably tolled throughout the period during which the insurance provider investigates the insured's claim. (*Id.* at p. 693.) This tolling period ends when the insurance provider either denies the insured's claim in writing (*ibid.*), or settles the insured's claim. (*Marselis v. Allstate Ins. Co.* (2004) 121 Cal.App.4th 122, 126.) The insurer is required to send a letter which clearly and unequivocally denies the claim. (See *Prudential-LMI, supra,* 51 Cal.3d at p. 678 [tolling ends upon insured's receipt of unequivocal denial in writing]; *Aliberti v. Allstate Ins. Co.* (1999) 74 Cal.App.4th 138, 146, 148-149.) "The reason for the tolling rule is to avoid

8

penalizing the insured for the time consumed by the insurer investigating the claim, while preserving 'the central idea of the limitation provision [that] an insured will only have 12 months to institute suit.'" (*Marselis v. Allstate Ins. Co., supra,* 121 Cal.App.4th at p. 125, citing *Prudential-LMI*, *supra*, 51 Cal.3d at p. 693.)

## III.    The Trial Court Erred in Granting Summary Judgment

On appeal, appellants argue that the statute of limitations remained tolled from the time they filed their insurance claim with State Farm on August 23, 2007, until they filed suit on November 3, 2010.  The trial court rejected this argument, concluding that the tolling period for the statute of limitations expired no later than November of 2008.  In reaching its decision, the trial court acknowledged that even if a triable issue of fact existed as to whether appellants received State Farm's closing letter dated November 12, 2008, appellants' conduct during the two-year period between November of 2008 and November of 2010 demonstrated their acknowledgment State Farm had closed their claim file no later than November of 2008.  The trial court based its conclusion on the following undisputed facts: (1) State Farm made all of its payments under the policy prior to November of 2008; and (2) appellants admitted receipt of every letter from State Farm, including the final warning letter sent September 25, 2008, with the only exception being the November 12, 2008, closing letter.  As discussed below, the trial court erred in granting State Farm's motion for summary judgment.

### a.  The *Marselis* Decision

Respondent urges this court to rely on *Marselis v. Allstate Ins. Co.* (2004) 121 Cal.App.4th 122, as authority to affirm the trial court's judgment.  The plaintiff in *Marselis* was the policyholder and sued her insurance provider, Allstate Insurance Company ("Allstate"), after Allstate refused to reopen the plaintiff's claim more than two years after the company made a series of payments under the claim.  (*Id.* at p. 125.) Following the Loma Prieta earthquake, the plaintiff filed a claim for structural damage to her home.  (*Ibid.*)  In February of 1990, after months of investigating the plaintiff's claim, Allstate paid the plaintiff approximately $92,000 under her policy.  (*Ibid.*)  Soon after, the plaintiff applied for a loan, informing the lender that she had recently settled an insurance

9

claim with Allstate. (*Ibid.*) Over two years after the settlement of her claim, the plaintiff asked Allstate to reopen her claim because she believed she could receive a more generous settlement. (*Ibid.*) After Allstate refused to reopen her claim, the plaintiff sued the insurance company. (*Ibid.*) Following a court trial on Allstate's statute of limitations defense, the court found that the one-year statute of limitations expired no later than February of 1990, when Allstate informed the plaintiff it would make no further payments under her claim. (*Ibid.*)

The court of appeal affirmed the trial court's decision, holding that the equitable tolling period expired in February of 1990, thereby restarting the one-year statute of limitations. (*Marselis v. Allstate Ins. Co., supra,* 121 Cal.App.4th at p. 126.) The court held that the requirement for written denial of an insured's claim to stop equitable tolling does not apply to cases in which the insurance provider has made all undisputed payments under the insured's policy. (*Id.* at pp. 125-126.) The court rationalized that "[n]othing justifies judicial extension of the equitable tolling rule to create a right to reopen claims that have been paid." (*Id.* at p. 126.) *Marselis* is distinguishable and the rationale does not apply to this case. In *Marselis* it was undisputed that the insureds' claim had been settled and resolved. No issue was raised about unresolved payments as in this case.

The core issue in this case is when did the tolling period end, thereby reactivating the running of the one-year contractual period? The California Supreme Court has been unambiguously clear when it held that *to end the equitable tolling of a contractual limitations period, the insurer must clearly and unequivocally deny the claim in writing*. (*Prudential-LMI Commercial Ins. v. Superior Court*, *supra*, 51 Cal.3d at p. 678.) California courts have consistently reinforced this rule, holding that "oral denials of claims are not sufficient to stop equitable tolling." (*Aliberti v. Allstate Ins. Co., supra*, 74 Cal.App.4th at pp. 146, 148-149; *Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc*. (2004) 115 Cal.App.4th 1145, 1163.)

The issue presented by State Farm's motion for summary judgment is whether State Farm "clearly and unequivocally denied the claim in writing."

To satisfy its initial burden, State Farm presented evidence of its November 12, 2008 letter to Attorney Knopfler, which purported to inform the Kallmans that: (a) State Farm was closing its file and (b) the one-year contractual limitations period commenced as of the date of the letter. It is apparent that the inference State Farm sought to draw from this evidence is that the Kallmans received the subsequent closing letter and, thus, had written a "clear and unequivocal" notice of State Farm's closure of the claim.

The Kallmans rebutted State Farm's evidence by submitting the declarations of Attorney Knopfler, Rebecca Luna, Andrew Kallman and Frances Kallman, all of whom testified that they did not receive State Farm's November 12, 2008 Closing Letter.

The Kallmans further asserted that from its evidence of non-receipt of the closing letter, a trier of fact could reasonably infer, *inter alia*, that State Farm never sent the closing letter, thereby creating a triable issue of fact. The court in *Jensen v. Traders & General Ins. Co.* (1956) 141 Cal.App.2d 162, 164 held that "If th[e] plaintiff's testimony denying the receipt of the letter was believed, the jury would be warranted in going further and finding that the letter was not posted." The court in *Lucas v. Hesperia Golf & Country Club* (1967) 255 Cal.App.2d 241, 247 held that plaintiff's testimony denying receipt of a notice raised an inference that notices were never mailed to plaintiff and, thus, created a conflict in the evidence to be resolved by the jury.

A single declaration is sufficient to create a triable issue of fact, but the evidence submitted by the Kallmans in support of their position is more extensive. The testimony of State Farm's own representative, Amanda Barberiz, provides further support for the Kallmans' position because she could not definitely state

11

whether she or someone else sent the closing letter and, thus, does not have actual knowledge that the letter was ever sent.

There is no dispute that State Farm did not send the closing letter by certified mail or by any other method that would confirm that the notice was, in fact, sent and/or received such as by return, receipt requested. State Farm points out that the Legislature has not mandated that such notices be sent by certified mail. The Kallmans respond to this contention by asserting that "State Farm's commentary misses the point – common sense dictates that a reasonable insurer who seeks to *make certain* that its insured receives the written notice of the denial of the claim would send the 'written notice of denial' by certified mail." Regardless of whether this criticism has merit, this court does agree that a triable issue of material fact has been raised which requires a reversal as hereafter stated.

The Kallmans' response to State Farm's motion for summary judgment provided sufficient evidence to establish a triable issue of fact as to whether State Farm provided the Kallmans with clear and unequivocal notice, in writing, of its denial of the Kallmans' claim, a legal prerequisite to end the tolling of the limitations period. As a consequence, the trial court erred in granting State Farm's motion.

In addition to the issue of whether State Farm *sent* the closing letter, evidence of the Kallmans is undisputed on the issue of whether they, in fact, *received* State Farm's "clear" and "unequivocal" written notice of the denial of the claim. With regard to this point, State Farm argues that "Appellants fail to provide any legal authority holding that actual receipt of a closing letter is required to end the equitable tolling." To give credit to State Farm's position on this point would be to ignore the rationale for the underlying legal principles applicable to issues such as in this case as declared by the California Supreme Court in *Prudential-LMI*

12

*Commercial Ins. v. Superior Court, supra,* which dictates that a clear denial in writing is required.

The September 25, 2008 letter from State Farm also fails to comply with the requirements of *Prudential-LMI*, because the closing letter was conditional by stating, in effect, "We will close unless, etc." Such language does not comply with the notification requirements established by our Supreme Court that to stop equitable tolling the language used must be clear and unequivocal in denying the claim. We hold that the September 25, 2008 letter did not terminate the tolling period.

State Farm has failed to negate the existence of a triable issue of fact regarding the applicability of its contractual limitations defense.

**DISPOSITION**

The judgment is reversed. Each party is to bear its own costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                                    **SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.